GEORGE B. OWEN, Appellant, v. CITY OF SIOUX CITY *et al.*

1 **Constitutional Law: Special Legislation:** MUNICIPAL CORPORATIONS. The fact that chapter 20, Acts, Twentieth General Assembly, relating to public improvements, deals, only, with cities organized since a stated date does not render it invalid as special legislation or as lacking "uniform operation throughout the state" under Constitution, article 3, section 30, nor does it deprive "any person of the equal protection of the laws" under amendment 14, Constitution U. S., section 1.

8 SAME. The intent of the act is to base its applicability on certain conditions existing in, and wants of, a class of cities, and not upon date of organization.

Constitutionality Presumed. An act need not show that the facts essential to its validity exist. Their absence must be conclusively shown by those attacking the enactment. *State v. Hammer,* 42 N. J. Law, 435, *distinguished; Santo v. State,* 2 Iowa, 165; *Richman v. Supervisors,* 77 Iowa, 513, 42 N. W. Rep. 422, *followed.*

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

FRIDAY, MAY 18, 1894.

THE plaintiff is the owner of certain lots on Jennings street, in the defendant city. The city of Sioux City is one of the first class, and the authorities of the city caused Jennings street to be graded, and provided that the cost thereof should be assessed to the adjoining property, in pursuance of which there was assessed against the plaintiff's lots, in the way of a special assessment, the sum of one thousand, sixty-two dollars and thirty-seven cents. The plaintiff applied to the district court for a temporary writ of injunction to restrain the collection of the assessment, which the court denied, and from its order the plaintiff appealed. —*Affirmed.*

*Strong & Owen* for appellant.

*Wright, Hubbard & Yeomans* with *J. L. Kennedy,* City Solicitor, for appellees.

GRANGER, C. J.—The authority of the city council to make the special assessment is by virtue of an act of the Twentieth General Assembly (chapter 20), containing the following provision: "Section 1. That cities of the first class, that have been or may be so organized since January 1, 1881, shall have power to open, widen, extend, grade, construct permanent sidewalks, curb, pave, gravel, macadamize and gutter, or cause the same to be done in any manner they may by ordinance

deem proper, any street, avenue, highway, or alley within the limits of such city, and may open, extend, widen, grade, park, pave, or otherwise as aforesaid, improve part of any such street, highway, avenue, or alley, and levy a special tax as hereinafter provided on the lots and lands fronting and abutting on such street, highway, avenue or alley, and where said improvements are proposed to be made, to pay the expenses of the same." It is contended that the act is "special legislation under the guise of a general law," and is therefore in contravention of the constitutional provision contained in the bill of rights that "all laws of a general nature shall have a uniform operation."

The particular ground upon which it is claimed that the act under consideration is without uniform operation is that the act, by its terms, limits its operation to cities of the same class "organized since January 1, 1881." It is said that such a distinction, based alone on a date of organization, is an evasion of the constitutional provision, and makes the act special and partial in its operation. The question has received extensive consideration from counsel, and the citations of authorities are numerous. That the law in question is special in its nature does not render it vulnerable to the constitutional inhibition. That it is special as to the subject-matter to which it applies is not to be doubted. Our constitution is not a grant of power to the legislature, but a mere limitation on such power, and, wherein the legislative power as to such legislation is not limited by the constitution, it exists. Article 3 of the constitution treats of the legislative department of the state, and section 30 thereof specifies wherein the "general assembly shall not pass local or special laws." Nothing in the specifications is in any way a prohibition on the legislative authority to legislate specially with reference to cities of a particular class, nor as to particular cities of

a class, by any form of designation; hence we may dismiss the claim that the act is of a special nature as to the subject of legislation so as to render it void. It may be said that most of our legislation is special in the sense of the subject-matter to which it applies, and much caution should be exercised in the application of the constitutional provision to avoid any undue infringement of legislative power.

We are, then, to inquire if, because cities of the first class, so organized prior to January 1, 1881, are excluded from its operation, the act is without such "uniform operation throughout the state" as to render it vulnerable to the constitutional inhibition. The act in question is a general law as to powers of cities organized under the general incorporation act, and it has no reference to cities under special charters. Excluding cities under special charters, and but one city of the state (Des Moines), of the class designated, is not within the operation of the act. The cities and towns of the state, when incorporated, are classified as cities of the first and cities of the second class, and incorporated towns; the classification being based on difference in population; and the exercise of corporate powers by each, under legislative authority, is in pursuance of such classification. Hence it seems to be conceded that legislation applicable to these different corporations answers the constitutional requirements as to uniformity of operation. It should be said, in this connection, that this basis of classification is one based on legislative enactments, and has no express constitutional sanction. The thought is important as bearing on the authority of the legislature to make other classifications in defining the operation of its enactments.

We quote the following from appellant's argument as a fair way of meeting his contention: "This act ignores the classification of cities by population for the purpose of exercising corporate powers, and creates a new classification, based not upon difference in population, not upon difference in surroundings, situation or peculiar circumstances, nor upon any difference whatever, but based solely and wholly upon an arbitrary date, which bears no relation to the legislative purpose, and has no connection with the needs or wants of a city with respect to street improvements." Having in view facts disclosed by the record, and of which we may take notice, it appears that when the act in question was passed there were but two cities in the state of the first class, incorporated under the general incorporation law. Des Moines, not within the provisions of the act, because incorporated before January, 1881, was one; and Council Bluffs, coming within its provision, because of its change from an incorporation under a special charter to one under the general law after January 1, 1881, was the other. The act, in terms, applies to all cities thereafter becoming cities of the first class, and other cities have since come within its provisions, and in the natural order of events, others will do so. The city of Des Moines was, at the adoption of the act, and has since been, of greater population than any other city in the state. By an act of the Twenty-third General Assembly, the act in question was so changed as to make its provisions applicable to cities of the second class having a population of more than ten thousand, according to the census of 1885. It will thus be seen that the question is far-reaching in its importance, and it is difficult to see how we can sustain the amendment and hold the original act void, as not being of uniform operation, should such a question be presented. But we understand that, because of the amendment being based on a classification of

population, its validity would not be questioned; and it is in harmony with repeated legislative acts, some of which have a judicial sanction, and others are generally observed without question as to their validity. We have, then, this situation: The original act specified a date as a means of classifying the cities, of the grade named, that are and are not to be affected by it. The difference in population which, as a fact, if specified in the act, would have served as a legal basis of classification, really existed, though not specified; and the query is presented, Will the act be declared unconstitutional, when facts are judicially known to exist that would be a legal basis for classification, because a date is used as a basis, and not such facts? That the legislature relied upon the date as a reason for its act, in any other sense than as it served as a means by which the law was made to meet the conditions and circumstances leading to its enactment, no one can believe. Of course the law was not made because of the date. It was made to meet conditions and wants, existing or anticipated, of a class of cities, and the date was but the separating point whereby other cities were excluded from the operation of the law. That it makes another classification of cities than those based on population is not fatal to the act, because, as we have said, the classification on the basis of population is by legislative action, and there is nothing prohibiting such further classification as the legislature may think proper; and the only proper inquiry as to classification in the case at bar is, is the act, because of the classification adopted, without that uniformity of operation contemplated by the constitution? We think not. Here we may properly cite a case much relied upon by appellant: that of *State v. Hammer*, 42 N. J. Law, 435. It is a case in its facts widely different from this. The act considered in that case was

modifying an existing law, which we understand to have been a general one, as to the "mode of appointing the members of a board of assessment and revision." Upon the record of the case, it affirmatively appears that the act, though general in its language, could not at the time, nor ever after, apply to more than two cities of the state; and, under a constitutional provision prohibiting special legislation, the act was held void. The constitution prohibited "the enactment of any local or special laws which regulate the internal affairs of towns and counties." The act considered, so changed existing laws as to permit in the two cities, the appointment, by the mayor and common council, of the "board of assessment and revision of taxes," instead of its election by the people. It will thus be seen that the ruling was made not only under a different constitutional provision from ours, but, also, as we have said, under very different facts. We think, when the facts of the different cases are considered, and their reasonings are viewed in the light of the facts, there is not to be found a case opposed to our conclusion. No case with a like state of facts has been cited. A highly significant fact with us, and one of controlling importance, is this: that the record is not an affirmative showing that conditions, relations and circumstances of the character claimed as essential to the validity of the act do not exist. We are not aware of any rule whereby an act of the legislature must specify the conditions on which its validity must depend, but on the contrary, the court will assume the existence of such conditions until it is apparent that they do not exist. In *Munn v. Illinois*, 94 U. S. 113, wherein the supreme court of the United States had under consideration the constitutionality of a state law, this language is used: "For our purposes, we must assume that, if a state of facts could exist which woold justify such legislation, it actually did exist when the statute under consideration was

passed.  For us the question is one of power, not of ex-
pediency.  If no state of circumstances could exist to
justify such a statute, then we may declare this one
void; but if it could, we must presume it did." In
*Peel Splint Coal Co. v. State,* 15 S. E. Rep. (W. Va.)
1000, the court, after quoting the foregoing language
from *Munn v. Illinois,* says:  "Whenever an act of the
legislature can be so construed and applied as to avoid
a conflict with the constitution, and give it the force of
law, such construction will be adopted by the court."
The same court in *Osborn v. Staley,* 5 W. Va. 85, said
it had "no authority to pronounce an act of the legisla-
ture unconstitutional, and for that reason void, except
in cases where the infringement or violation is so plain
as to be beyond all reasonable doubt."  This court has
repeatedly said, and the rule is of very universal accept-
ance, that a legislative act will not be held unconstitu-
tional unless it is clearly and plainly so.  *Santo v. State,*
2 *Iowa,* 165; *Richman v. Supervisors,* 77 Iowa, 513, 42
N. W. Rep. 422.  The United States supreme court, in
*Ogden v. Saunders,* 12 Wheat. 213, employed the fol-
lowing language:  "It is but decent respect due to the
wisdom, the integrity, and the patriotism of the legisla-
tive body by which any law is passed to presume in
favor of its validity until its violation of the constitu-
tion is proved beyond a reasonable doubt.  This has
always been the language of the court when that sub-
ject has called for its decision."  The pro-
vision of the constitution of the United States
that "no state shall deny to any person within
its jurisdiction the equal protection of the laws"
(Const. Amend. art. 14, section 1), is not violated by
the act in question.  Any further discussion of the
question is not important.  The judgment is AFFIRMED.