(No. 6294. November 20, 1935.)

L. B. POWELL, CHARLES I. HARDIMAN, GEORGE LUCAS, JAMES E. SHORTEN, E. H. DEWEY, INCORPORATED, a Corporation, and BOISE TRUST COMPANY, a Corporation, Receiver of ROBERT NOBLE ESTATE, a Corporation, Respondents, v. G. E. McKELVEY, Commissioner of Public Works, and J. H. STEMMER, Director of Highways, and JAMES J. BURKE & CO., a Corporation, Appellants.

[53 Pac. (2d) 626.]

Bert H. Miller, Attorney General, Leo M. Bresnahan, Assistant Attorney General, Hawley & Worthwine, W. A. Brodhead and Frank F. Kibler, for Appellants.

Richards & Haga, J. R. Smead and F. A. Hagelin, for Respondents.

GIVENS, C. J.—Respondents respectively own property abutting on the east and west sides of Eleventh Avenue South in Nampa, which street immediately north of said properties intersects Front Street at right angles and extends north across the right of way and railroad tracks of the Oregon Short Line Railroad Company. Respondents' properties lie in the blocks east and west of Eleventh Avenue South and between Front Street on the north and First Street on the south, as appears from the appended map, being the portion of Plaintiffs' Exhibit 1 material to the case herein.

April 20, 1935, the Department of Public Works designated Eleventh Avenue South as a State Highway and on the 26th day of April, executed a contract with appellant James J. Burke and Company for the construction of a concrete subway in the center of Eleventh Avenue South, commencing its descent a few feet north of the intersection of Eleventh Avenue South and First Street South, proceeding to a depth of some 18 feet at about Front Street, thence under the right of way and railroad tracks of the Oregon Short Line Railway Co., ascending to the north of the tracks again to the level of Eleventh Avenue South as it now exists north of the tracks. The subway to be constructed with a total width of 24 feet, with subway sidewalks reached by stairs, extending parallel but not immediately adjacent to said vehicular portion of said subway underneath the tracks of the Short Line.

The present action was instituted by respondents to restrain construction of the subway on the ground that the Department of Public Works had no authority to make such a contract or to construct such subway without compensating appellants for the alleged taking of and damage to their property by the construction of the subway. A prior suit involving the same issues was filed in the district court, wherein it was held that under the law as it then existed, I. C. A., section 39–2107, the State Public Works Department had no authority to make such a contract because Nampa was a city of over 6,000 inhabitants. Thereafter the Second 1934–1935 Extraordinary Session of the Legislature passed the following acts pertinent to this controversy: (The amendatory matter being italicized.)

(Chapter 3.)

"Section 1. All contracts and agreements heretofore entered into by the State of Idaho, acting by and through the Commissioner of Public Works for the improvement, construction, reconstruction, repair or maintenance of highways into and through incorporated cities and villages, including all proceedings leading up to the execution of said contracts, are hereby validated, ratified, approved and confirmed, notwith-

standing any lack of power (other than constitutional) of the Commissioner of Public Works and/or the governing board of any city or village, to enter into such contracts at the time they were made, and notwithstanding any defects or irregularities (other than constitutional) in such proceedings; and all such contracts are and shall be binding, legal, valid, and enforceable obligations of all of the parties thereto.

"Sec. 2. An emergency existing therefor, which emergency is hereby declared to exist, this Act ·shall be in force from and after its passage and approval by the Governor.

"Approved July 12, 1935."

(Chapter 4.)

"Section 1. That Section 39–2101, Idaho Code Annotated, be and the same is hereby amended to read as follows:

" '39–2101. STATE HIGHWAYS—DEFINED. . . . . *All highways which have been designated by the Department of Public Works as State highways and taken over, improved, constructed, reconstructed, repaired, or maintained by the Department of Public Works, at any place within the State of Idaho with funds derived from any source, including highways designated and taken over, improved, constructed, reconstructed, repaired, or maintained within the limits of incorporated cities and villages are state highways and* shall be deemed to include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, . . . . bridges, *grade separation structures or roadside improvements, appurtenant to such highways.'*

"Sec. 2. That Section 39–2107, Idaho Code Annotated, be and the same is hereby amended to read as follows:

" '39–2107. STATE HIGHWAYS, MAINTENANCE BY STATE—APPORTIONMENT OF COST WITH MUNICIPALITIES . . . . All *state* highways . . . . shall be maintained at the sole expense of the state, unless a part thereof shall be or become a part of a city or incorporated village having a population of more than 2500 inhabitants, and . . . . less than 6000 inhabitants, *in which event* the department of public works is authorized to enter into agreements with the board of trustees of such incorporated village or

with the city council of such city, for the maintenance . . . .
*In cities having a population of 6,000 or more inhabitants,
through or into which a state highway has been or may be
hereafter constructed, the maintenance of such state highway
shall be wholly at the cost and expense of such city.'*

"Sec. 3. That Section 39-2108, Idaho Code Annotated,
be and the same is hereby amended to read as follows:

" '39-2108. STATE HIGHWAYS — C O N T R A C T S
WITH COUNTIES — HIGHWAY DISTRICTS — *CITIES
AND VILLAGES.* (a) The department of public works is
authorized to enter into an agreement with . . . . *the board
of trustees of any incorporated village or the city council
of any incorporated city* through which a state highway is
planned, to assume the maintenance of any existing *state*
highway, or jointly to improve any existing *state* highway,
or to construct a new *state* highway or any part or portion
thereof, *subject to the provisions of Section 39-2107, Idaho
Code Annotated.*

" '(c) The work on any *state* highway agreed to be im-
proved or constructed jointly, shall be performed under the
provisions of this chapter and under the supervision of the
department of public works. . . . . ' "

(Chapter 5.)

"Section 1. That Section 65-3101, Idaho Code Anno-
tated, as amended by Chapter 165, Session Laws of 1933, be
and the same is hereby amended to read as follows:

" 'Section 65-3101. POWERS AND DUTIES.—The De-
partment of public works shall have power: . . . .

" '5. To lay out, build, construct and maintain state high-
ways at any place within the state of Idaho, *and have ex-
clusive supervision, jurisdiction and control over the designa-
tion, location, maintenance, repair and reconstruction of the
same.*

" '6. To improve, alter or extend any state highway here-
tofore or hereafter laid out or constructed.

" '10. To have general supervision of all state highways
and bridges within the state, and of the construction, mainte-
nance and improvement of the same.' "

(Chapter 6.)

"Section 1. That section 49–1141, Idaho Code Annotated, be, and is hereby amended to read as follows:

" '49–1141. Public ways and commons — Supervision. The city councils of cities and boards of trustees of villages shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the corporate limits, and shall cause the same to be kept open and in repair and free from nuisances: *Provided, however, that where any street within the corporate limits has been designated as a part of the State Highway, then the Department of Public Works shall have exclusive supervision, jurisdiction and control over the designation, location, maintenance, repair and/or reconstruction of the same.' "*

(Chapter 7.)

"Section 1. That Section 39–403, Idaho Code Annotated, be, and the same is hereby amended to read as follows:

" '39–403. Exclusive jurisdiction of commissioners—Further powers.—The board of county commissioners in each county shall have, except within the territorial limits of incorporated cities, towns and villages, . . . . exclusive general supervision and jurisdiction over all the highways within the county . . . . ; *provided, however, that where any highway within the county has been designated as a part of the state highway system of the state of Idaho or as a state highway, then the department of public works shall have exclusive supervision, jurisdiction and control over the designation, location, maintenance, repair and/or reconstruction of the same.' "*

(Chapter 8.)

"Section 1. That Section 39–1521, Idaho Code Annotated, be and the same is hereby amended to read as follows:

" '39–1521. General powers and duties of board of commissioners.—The highway commissioners in such highway district shall constitute the highway board, and shall have except as provided in section 39–1580, exclusive general supervision and jurisdiction over all highways within their dis-

trict . . . . ; *provided that where any highway within the limits of such highway district has been designated as part of the state highway system of the state of Idaho or as a state highway, then the department of public works shall have exclusive supervision, jurisdiction and control over the designation, location, maintenance, repair and/or reconstruction of the same.' "*

Respondents take the position that the contract having been held void in the district court in the previous suit, no appeal having been taken, and that judgment not having been reversed, they have a vested property right therein that cannot be taken away by retrospective or retroactive legislative action, and that the statute was not intended by the Legislature to have a retroactive or retrospective effect, and if the Legislature did have such intent or the statute be given that construction, it is in violation of Section 12 of Article 11 of the Constitution. The respondents further contend that the construction of the subway deprives them of ingress and egress to Eleventh Avenue South, both between First Street and Front Street and by the closing of Eleventh Avenue South on its present grade across the Oregon Short Line tracks, amounts to a taking of their property for which they are entitled to compensation under Section 14 of Article 1 of the Constitution, and that since the State through its Department of Public Works is seeking to construct the subway, they are deprived of their action for compensation and are entitled to injunctive relief. Respondents also contend they own the fee simple title to the center of the street, and that the plat of their predecessors in interest of the lots, blocks, and streets, in which the property lies, contains no dedication and that therefore the city or State as the case may be, have only a surface easement in Eleventh Avenue South.

Appellant interposed an answer setting up the contract, designation by the State of Eleventh Avenue South as a State Highway, appropriate reference to the statutes involved as passed by the Legislature in the Second Extraordinary Session, 1935, and ordinances of the City of Nampa granting

such authority as was necessary for the city to exercise in cooperating with the Public Works Department.

The trial court to expedite a solution of this problem sustained *pro forma* respondents' demurrer to appellants' answer and no point is made by either side that all the essential and pertinent facts do not sufficiently appear in the complaint and answer.

 While it is true that no dedication appears on the original plat covering respondents' properties filed in 1887, in 1893 the Legislature passed an act validating plats, the pertinent portion now being I. C. A., Sec. 49–2213 as follows:

"Existing plats validated.—None of the provisions of this chapter shall be construed to require replatting in any case where plats have been made and recorded in pursuance of any law heretofore in force; and all plats heretofore filed for record and not subsequently vacated, are hereby declared valid, notwithstanding irregularities and omissions in manner of form of acknowledgment or certificate; but the provisions of this section shall not affect any action or proceeding now pending."

And I. C. A., Sec. 49–2205:

"Effect of acknowledging and recording plat.—The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use; or as is thereon dedicated to charitable, religious or educational purposes."

which this court has held impressed upon all plats theretofore filed, as this one was, a dedication to the public of the streets and alleys outlined in such plats with the same force and effect as though a dedication had originally been placed upon such plats (*Boise City v. Hon,* 14 Ida. 272, 94 Pac. 167; *Shaw v. Johnston,* 17 Ida. 676, 107 Pac. 399; *Hanson v. Proffer,* 23 Ida. 705, 132 Pac. 573); and that while the adjoining or abutting property owners own the fee of the land to the center of the street, the city or State, as in the case herein involved, has the complete right to the use of such land

for street purposes, which leaves for consideration then the main question of whether the construction of the subway is a street use, which may be made without compensation to the adjoining or abutting property owner.

Before proceeding to consider authorities from other jurisdictions, we will first take up the Idaho cases that bear upon this question; the first being *Village of Sandpoint v. Doyle*, 14 Ida. 749, 95 Pac. 945, 17 L. R. A., N. S., 497. In that case a street in the Village of Sandpoint crossed at right angles a depression in which there was at low water a stream about 25 feet wide and 6 inches deep, at high water 300 feet wide and 15 feet deep at the deepest point. Doyle owned a lot within the depression adjoining the road between high and low water. The Village of Sandpoint constructed a bridge on the side of the street next to Doyle's property, some 400 feet long, about 16 feet wide and 27 feet high at the highest point in the creek bottom. Doyle erected a building on his lot about 12 feet from the bridge, with the floor of his building level with the bridge, and connected therewith by an open platform or causeway and appropriate guard rails, etc. The first controversy which arose between Doyle and the Village of Sandpoint was because of his use of the building as a saloon; later, however, Doyle abandoned the saloon business and opened a general mercantile establishment, and the real issue was whether he had the right to connect his building by a causeway or platform with this bridge. While this bridge was built on one side of the street, it is apparent from the pictures, exhibits in that case, that Doyle was entirely shut off from the use of the street on the surface of the ground and below the bridge extending from where the bridge left the surface of the street along the natural surface of the ground and at the other end of the bridge because of the guard rails built along each side of the approach portion of the bridge, thus except as Doyle connected his building with the bridge as he did, he was deprived absolutely of ingress or egress to the street or the bridge adjacent to and immediately in front of his property, which is not the situation involved herein.

As appears from the detailed statement of the facts, *supra,* and an inspection of plaintiffs' (respondents') exhibit No. 1, attached hereto, the construction of the subway leaves an 18½-foot roadway or vehicular passageway (the two shaded portions parallel to the open cut of the subway) and a 7-foot sidewalk in front of respondents' properties with access towards the north to Front Street and on the south to First Street South. There are essentially only three main uses of Eleventh Avenue South, of which respondents are in any measure deprived. First, a continuation of the traffic over Eleventh Avenue South on the surface of Eleventh Avenue South as it now exists in front of their places, and second, a continuation of that travel north across and over the railroad tracks, and lastly, the use of the full width of Eleventh Avenue South in front of their properties at its present level. They are not, however, denied ingress or egress to Eleventh Avenue South as to either side or its connection with Front Street or First Street South, and the only effect upon their access to areas north of the Oregon Short Line tracks is that instead of coming either immediately out from their places or from the alley in the block east of Eleventh Avenue South thence north across the tracks, they must go to the intersection of Eleventh Avenue South with First Street South, to there enter the subway going north, or go on First Street South or Front Street to other streets or roads, if any, crossing the railroad tracks.

In the Doyle case the court said:

"Every citizen has an equal right with every other to travel the streets of this municipality; but, on the contrary, every property owner having a lot abutting on a street or thoroughfare has a special and peculiar right in that particular street not common to the other citizens. That right is a property right appurtenant to his lot, and furnishes him the means of getting to and from his property and thereby enjoying the common right of all the streets with the balance of the citizens of the community. If he cannot get out from his property and has no means of ingress or egress, then the streets and thoroughfares of the municipality will be of no

use to him, and consequently his property will be of but little benefit to him. While the public generally may have no special or particular interest in the right of ingress to any particular lot owner's property, the lot owner has a very material and special interest in having the public reach his property and place of business, and in his right to go and come and carry on business and invite the public to his place of business. It has been held by the courts that to cut off this right of ingress and egress would be to take the lot owner's property without due process of law. (*Transylvania University v. City of Lexington*, 3 B. Mon. (Ky.) 25, 38 Am. Dec. 173; *Story v. New York Elevated R. Co.*, 90 N. Y. 122, 43 Am. Rep. 146; *Adams v. Chicago etc. R. Co.*, 39 Minn. 286, 39 N. W. 629, 12 Am. St. 644, 1 L. R. A. 493; Elliott on Roads and Streets, 2d Ed., Sec. 695.)''

and again:

''In such cases, while the municipality may adopt reasonable rules and regulations with reference to the erection and maintenance of buildings and all approaches to the same, and entrance to and over the street, it cannot absolutely prohibit the property owner from using the street and enjoying his right of going and coming to and from his property through and over such street. In order to enjoy that right and privilege, he must be accorded an equal and concurrent right of using such means and methods on his own property as to enable him to get to the street and connect his property or place of business with the street or highway over which he must necessarily pass.''

Applying these statements of respondent's rights to the instant case it is apparent that considering the difference between a subway and an elevated structure, respondents have been deprived of no rights to ingress and egress with respect to Eleventh Avenue South to which the Doyle case, *supra*, says that the adjoining or adjacent property owner is entitled.

Next as to the case of *Idaho-Western Ry. Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod*, 20 Ida. 568, 119 Pac. 60, 38 L. R. A., N. S., 497. A railway

company there brought an action to condemn a strip of land 100 feet in width of the southwest side of respondent's premises. The main point in the case involved what elements might be considered in determining the value of the land so sought. Eleven different elements were listed by the court, the court intimating that others might be considered. The case is, however, illuminating and instructive as to the meaning of "taken" in Art. 1, Section 14, of the Constitution and holds that the use of the word "taken" alone in our Constitution, the words "or damaged" being left out of our Constitution though contained in numerous other State Constitutions, meant that before an owner is entitled to compensation his property must be "taken" and not merely "damaged." While respondents argue herein that the removal of the dirt from the center of the street, necessary for the construction of the subway, is a "taking" of their property, it is no more so than if the grade of the entire street were lowered a foot or two and the dirt hauled completely away.

The court in the *Northern Transportation Company of Ohio v. City of Chicago*, 99 U. S. 635, 25 L. ed. 336, said:

"But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action. This is supported by an immense weight of authority. Those who are curious to see the decisions will find them collected in Cooley on Constitutional Limitations, page 542 and notes. The extremest qualifications of the doctrine is to be found, perhaps in *Pumpelly v. Green Bay Co.*, 13 Wall. 166 [20 L. ed. 557], and in *Eaton v. R. R. Co.*, 51 N. H. 504 [12 Am. Rep. 147]. In those cases it was held that permanent flooding of private property may be regarded as a 'taking.' In those cases there was a physical invasion of the real estate of the private owner, and a practical ouster of his possession. But in the present case there was no such invasion. No entry was made upon the

plaintiffs' lot. All that was done was to render for a time its use more inconvenient.

"The present Constitution of Illinois took effect on the 8th of August, 1870, after the work of constructing the tunnel had been substantially completed. It ordains that private property shall not be 'taken or damaged' for public use without just compensation. This is an extension of the common provision for the protection of private property, but it has no application to this case, as was decided by the Supreme Court of the State in the case of *Chicago v. Rumsey,* recently decided and reported in Vol. X, Chicago Legal News, p. 333 (87 Ill. 348). That case also decides that the City is not liable for consequential damages resulting from an improvement made in the street, the fee of which is in the City, provided the improvement had the sanction of the Legislature. It also decides that La Salle Street is such a street, and declares that a recovery of such damages by an adjacent lot-holder has been denied by the settled law of the State up to the adoption of the present Constitution. There would appear, therefore, to be little left in this case for controversy."

And though there is authority to the contrary, *White v. Southern Ry. Co. et al.,* 142 S. C. 284, 140 S. E. 560, 57 A. L. R. 634, California has very recently recognized the correctness of the rule in *Idaho-Western Ry. Co. v. Columbia Synod, supra,* in *McCandless v. City of Los Angeles,* 214 Cal. 67, 4 Pac. (2d) 139. The real basis of respondents' complaint in this particular is that they are injured because of the diversion of the traffic from the present level of Eleventh Avenue South and across and over the Oregon Short Line tracks to the subway and under the tracks, which feature we will discuss a little later.

The third Idaho case is *Crane v. City of Harrison,* 40 Ida. 229, 232 Pac. 578, 38 A. L. R. 15, wherein the City of Harrison lowered the level of a street in front of Crane's property some six feet and destroyed Crane's water and sewer pipes thereby. The statement of the court therein is in principle conclusive of the issues herein:

"The demurrer involves the question as to whether a municipality is liable in damages to the owner of property abutting upon a public street for injuries resulting to such property caused by the regrading of such street for the use of the public. It is the contention of appellant that under the constitution and laws of this state just compensation is required to be paid for the taking, damaging or injuring of private property for public use and that the municipality is liable for damages so sustained. It is respondent's contention that such injuries or damages as alleged in the complaint are consequential damages or *damnum absque injuria*, for which no recovery can be had. Art. 1, sec. 14, of the constitution provides that: 'Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor.' This provision of the constitution is unlike constitutional provisions on the same subject in some other states, in this, that the words 'or damaged' are inserted after the word 'taken,' and under such a provision damages caused by regrading of public streets may be recovered by the abutting land owners. (1 Lewis on Eminent Domain, 3d Ed., sec. 348, p. 629.) Under the provisions of art. 1, sec. 14, *supra*, municipal corporations, in order to acquire a right to establish a public use, must first pay a just compensation for the land so taken. When so taken the municipality is authorized, under the provisions of C. S., sec. 3842, among other things, to grade or establish grades of streets and repair and maintain the same. (*Macy v. City of Indianapolis*, 17 Ind. 267; 4 McQuillin on Municipal Corporations, sec. 1844, p. 3963.) The rule would seem to be, under the above constitutional provision, that any damages or injuries sustained by the owner of abutting property, are but consequential damages, or *damnum absque injuria* for which no recovery can be had, for the reason that all such damages are included in the payment of a just compensation when the land was taken. It was held in the case of *City of Nampa v. Nampa & Meridian Irr. Dist.*, 19 Ida. 779, 115 Pac. 979, following *Smith v. City of Washington*, 20 How. (61 U. S.) 135, 15 L. ed. 858,

that under the provisions of sec. 2238, Rev. Codes, subd. 3 (now C. S., sec. 3942, *supra*), municipalities have the power, among other things, to grade and establish grades and repair and maintain the same, and for damages incidentally resulting to abutting property from the lawful exercise of the power so conferred they are not liable to the owner in the absence of a statute expressly imposing such liability. Our attention has not been called to any such statute. See, also, to the same effect: *Talbot v. New York & H. R. R. Co.*, 151 N. Y. 155, 45 N. E. 382; *Morris v. City of Indianapolis*, 177 Ind. 369, 94 N. E. 705, Ann. Cas. 1915A, 65. In the case of *Idaho etc. Ry. Co. v. Columbia etc. Synod*, 20 Ida. 568, 119 Pac. 60 [38 L. R. A., N. S., 497], which was an action brought under the eminent domain statutes for the purpose of determining the value of the property sought to be taken and damage to the property not taken, in the course of that opinion it was held that damages should be assessed once and for all time and should be based upon the most injurious use to which the condemnor may lawfully put the property. If this is a correct statement of the rule, at the time the municipality acquired the right of way for street purposes, appellant or his predecessor was given damages once and for all time, based upon the most injurious use of the land reasonably possible to which the city might lawfully put it. This would be true where the city acquired the property either by dedication or condemnation and the damages sought to be recovered were included in the just compensation required to be paid under the provisions of the constitution above quoted. Where a street or highway becomes such by dedication, compensation for the easement is expressly waived by the dedicator. (*Morris v. City of Indianapolis, supra; Raunenstein v. New York L. W. Ry. Co.*, 136 N. Y. 528, 32 N. E. 1047, 18 L. R. A. 768.) Under the almost unanimous decisions of the various state courts and the United States Supreme Court, the rule is announced that changing the grade of streets by a municipality does not amount to a taking within the meaning of art. 1, sec. 14, of our constitution. (*Northern Transp. Co. v. City of Chicago*, 99 U. S. 635, 25 L. ed. 336; *Callender*

*v. Marsh,* 1 Pick. (Mass.) 418.) In the case of *Talcott Bros.
v. City of Des Moines,* 134 Iowa, 113, 109 N. W. 311, 120 Am.
St. 419, 12 L. R. A., N. S., 696, the court held that a city may,
in the exercise of its lawful powers, in bringing a street in
which it owns the fee to the re-established grade, excavate
therein so that the soil of an abutting lot will slide into the
street, without incurring liability for taking property with-
out compensation or for removing the lateral support. The
rule would seem to be well settled that in the absence of con-
stitutional or statutory provisions requiring compensation for
property injured as distinguished from property taken, no
damages can be recovered by the abutting owner for conse-
quential damage resulting from the elevation or depression of
streets, where the municipality has not transcended its au-
thority, but acted within its jurisdiction in the interest of
public safety and convenience.''

This case is decisive of two propositions. First, that lower-
ing the level of the *entire* street does not entitle the adjoining
owners to compensation and second or as part of the first, that
such change of level is not a ''taking'' within the contempla-
tion of the Constitution, Article 1, Section 14. California has
held to the same effect in *Hayes v. Handley,* 182 Cal. 273, 187
Pac. 952, and the opinion in *McCandless v. City of Los An-
geles,* 214 Cal. 67, 4 Pac. (2d) 139, superseding the opinion
in *McCandless v. City of Los Angeles,* (Cal. App.) 296 Pac.
895, does not militate against the effect of *Hayes v. Handley,
supra,* because of the essential difference in the facts and
that the McCandless case is based upon the guarantee in the
California Constitution of compensation for ''damages,''
which provision we do not have.

See, also, 20 C. J. 692; 2 Cooley, Constitutional Limitations,
p. 1152, n. 1; *Brand v. Multnomah County et al.,* 38 Or. 79,
60 Pac. 390, 84 Am. St. 772, 50 L. R. A. 389; *Barrett et al. v.
Union Bridge Co.,* 117 Or. 220, 243 Pac. 93, 45 A. L. R. 521;
*Peabody v. City of Boston,* 220 Mass. 376, 107 N. E. 952,
L. R. A. 1915F, 1005; *Dantzer v. Indianapolis Union Ry. Co.,*
141 Ind. 604, 39 N. E. 223, 50 Am. St. 343, 34 L. R. A. 769.
The authorities cited by respondents while containing some

expression of opinion contrary to the above, upon a careful analysis of the facts, show that such authorities do not support respondents' position, or are in conflict with the previous holdings of this court, *supra*.

In *Continental Oil Co. v. City of Twin Falls*, 49 Ida. 89, 286 Pac. 353, the real question considered was the constitutionality of a city ordinance, restricting the building of gasoline service stations within 500 feet of a schoolhouse. What was said as to the right of ingress and egress was incidental to said main point and moreover does not differ from the conclusion herein and the court cited with approval *Sandpoint v. Doyle, supra*.

In *Brazell v. City of Seattle*, 55 Wash. 180, 104 Pac. 155, one-half of the street in question was vacated by the city council, thus giving the adjoining owner title to the vacated portion which was to the injury of appellant in that case, because when he joined in the petition he contemplated the full vacation of the street which would have also given him his half of the vacated street; the injury complained of being entirely different from the one in the instant case, the gist of the holding being:

"From a careful consideration of this statute, we conclude that the petition and notice only conferred upon city councils authority to approve and adopt or disapprove and reject the identical plat presented. By section 1 it is required that the proposed replat be drafted upon a copy of the existing plat, which must be 'accompanied with a petition for the change desired'—that is, for the change, indicated on the replat, and desired by the petitioners—not for some other changes which the council may desire. If the proposed plat and petition do not meet the approval of the city council, they are at liberty to reject them entirely, in which event the original plat will continue without modification."

In *Wilkins v. Guffey City*, 54 S. C. 199, 32 S. E. 299, sufficient facts do not appear to make an analogy with the instant case, the court holding that since the town council had the right to condemn land for the purposes of opening, closing up, widening or altering streets, there was a corresponding

duty to render damages sustained, where there was an alteration and a partial closing of a street for a railway company to lay its track through the street; no question of "taking" or the right to ingress or egress being considered.

In *Heinrich v. City of St. Louis*, 125 Mo. 424, 28 S. W. 626, 46 Am. St. 490, the entire street abutting on plaintiff's property was vacated, and the court permitted damages for depreciation of the value of the property, on the ground that his right to ingress and egress had been destroyed, since he was no longer on a public way on the side of his property in question. This case is not applicable to the instant case, since Eleventh Avenue South remains open and adjacent to respondents.

In *Transylvania University v. Lexington*, 3 B. Mon. (Ky.) 25, 38 Am. Dec. 173, the University agreed with the city to close a street running through its grounds, reserving to the town the right to reopen it when the public interests demanded, and the Legislature later ratified the agreement, the court held: equity will not afterwards enjoin the town from its reserved right to open the street, according to the agreement.

In *Haynes v. Thomas*, 7 Ind. 38, it appears that plaintiff dedicated the land in front of his lots for a street, later the street was vacated by the Legislature, and defendant built a warehouse upon it, thus obstructing plaintiff's passage from his lots to the river. Neither of these facts occurred in the instant case, making it inapplicable.

In *Lackland v. North Mo. R. Co.*, 31 Mo. 180, the railroad company had the right to build tracks on the street, but in addition it used the entire street in front of plaintiff's lot for a loading depot, rendering it useless as a street. There were switching tracks, standing cars, and cattleways, so that even foot-passengers had no access to plaintiff's property.

In *Walters v. Baltimore & O. R. Co.*, 120 Md. 644, 88 Atl. 47, 46 L. R. A., N. S., 1128, it was held that an abutting property owner could not recover damages for change of grade to the street adjoining his property, but where all means of access to the dwelling of the owner were cut off,

and the first floor of his home made uninhabitable, then he was entitled to damages. Not at all the situation herein.

In *Eaton v. Boston, C. & M. R. R.*, 51 N. H. 504, 12 Am. Rep. 147, the Railway Company after securing legislative authority to build its road, removed a natural barrier situated on plaintiff's land, which had before protected the land from floods and freshets. The removal caused the flood waters to come upon his land and carry sand, gravel and stones thereon, and this was held to be a taking of his property, within the constitutional prohibition, for which he was entitled to compensation. No such injury or damage is shown in the instant case.

In *Abendroth v. Manhattan Ry. Co.*, 122 N. Y. 1, 25 N. E. 496, 19 Am. St. 461, 11 L. R. A. 634, elevated double tracks were erected in a street which was only 41 feet between house lines, leaving little access to the property of plaintiff, and impairing the light to the property, as well as causing smoke, cinders and gas to penetrate the house, and though the court held this to be a material impairment of the plaintiff's right of property, such holding rests on conditions not present in the instant case.

In *Van Witson v. Gutman*, 79 Md. 405, 29 Atl. 608, 24 L. R. A. 403, an ordinance enacting that a portion of a public alley between defendant's lots should be closed and permitting her to build buildings thereon, debarring other owners of lots abutting on the alley from access to a street with which such alley connected, was held to be taking of the easements of the other lot owners for private use, which is not the case herein.

In *Norwalk v. Podmore*, 86 Conn. 658, 86 Atl. 582, a bridge was built, and the surface of the soil, on each side of the bridge, over which the tide ebbed and flowed, was five feet below the traveled portion of the bridge, except where built on and reclaimed by abutting owners, and the town maintained a fence for the protection of the public, which prevented access to the bridge from defendant's land, the court held that the abutting owner had a right of access whether

he owned the soil to the center of the highway or not, merely coinciding with *Doyle v. Sandpoint, supra.*

In *Coyne v. City of Memphis,* 118 Tenn. 651, 102 S. W. 355, the plaintiff was left only 14 feet over all between his property and the very edge of the excavation in the street, which included the sidewalk as well as a rock driveway which did not afford room to turn around in; not the situation herein.

In *Illinois Cent. R. Co. v. Moriarity,* 135 Tenn. 446, 186 S. W. 1053, a street was *closed* (italic ours) by elevation of railroad tracks not abutting on, but adjacent to, plaintiff's land, it was held that he was entitled to compensation, because it was a "taking." Furthermore Tennessee has a special statute which we do not have, as does Connecticut, *Platt v. Town of Milford,* 66 Conn. 320, 34 Atl. 82, which distinguishes the Tennessee cases. (*Stegall et al. v. City of Chattanooga,* 16 Tenn. App. 124, 66 S. W. (2d) 266, 272; *Forbes v. Town of Orange,* 85 Conn. 255, 82 Atl. 559.) That Connecticut in allowing compensation relied on such statute is clear from *Newton v. New York, N. H. & H. R. Co.,* 72 Conn. 420, 44 Atl. 813, where damages were sought by an adjacent property owner because of the construction of a subway by his premises under railroad tracks, and the court denied his right to compensation.

We come now to the question of diversion of the traffic as to going under the railroad tracks instead of over the tracks, with respect to which respondents are in no different position than anyone else, and as to the question of necessity or reason for construction of the subway, not from a standpoint of condemnation purposes, but as connected with the general scheme of safe construction of State Highways, the record shows that approximately 150 trains pass over the Short Line tracks in twenty-four hours and 5,000 vehicles and 1,000 pedestrians pass across said tracks in twenty-four hours. The elimination of the grade crossing therefore rests upon an entirely adequate exercise of discretion and due regard of the traveling public by the Department of Public Works, so far as that is involved herein. If instead of the

construction of a subway the Department of Public Works had established the through highway or link of the Oregon Trail, including, as it does now, Eleventh Avenue South, over a route clear outside the city of Nampa or over some other street, these property owners would have been deprived of the passing public going in front of their places as effectively, so far as their use of a through highway is concerned, as by the construction of this subway, yet it is not contended, as we understand it, nor would it be correct to say if it were, that such would be a "taking" of respondents' property entitling them to compensation, so far as the use of the full width of the street is concerned between the intersection of First Street South and Front Street. Such use may be so restricted by the municipality or the State as to prevent legally, turning vehicles in the center of the street, or the driving from one curb to the other except at the intersections, and likewise parking privileges may be restricted.

While the manner of use of the street is changed, the kind of use is not changed, in other words and by way of illustration only, it is still used as a highway; neither the State nor the City are attempting to make use of the center of the street for park purposes or building purposes or anything else. The court said in *Willis v. City of Winona*, 59 Minn. 27, 60 N. W. 814, 26 L. R. A. 142:

"The bridge is just as much a public highway as is Main Street, with which it connects, and, whether we consider the approaches as a part of the former or of the latter, it is merely a part of the highway. The city having, as it was authorized to do, established a new highway across the Mississippi river, it was necessary to connect it, for purposes of travel, with Main and the other streets of the city. This it has done, in the only way it could have been done, by what, in effect, amounts merely to raising the grade of the center of Main street in front of plaintiff's lot. It can make no difference in principle whether this was done by filling up the street solidly, or, as in this case, by supporting the way on stone or iron columns. Neither is it important that the city raised the grade of only a part of the street, leaving the remainder

at a lower grade. The facts that it required authority from the United States and the state of Wisconsin, as well as of Minnesota, to empower the city to build a bridge across the Mississippi, or that such bridge extended beyond the city limits, are wholly immaterial, so long as the city kept within the authority conferred upon it. Had the authority been to tunnel under the river, and the approach had been made by cutting down the grade of a part of Main street, the principle would have been exactly the same. The doctrine of the courts everywhere, both in England and in this country (unless Ohio and Kentucky are exceptions), is that, so long as there is no application of the street to purposes other than those of a highway, any establishment or change of grade made lawfully, and not negligently performed, does not impose an additional servitude upon the street, *and hence is not within the constitutional inhibition against taking* private property without compensation, and is not the basis for an action for damages, unless there be an express statute to that effect.'' (Italics ours.)

The center portion is still being used as a street or roadway and the property owners are provided with ingress and egress at the present level to the present street on each side, to a highway wide enough for two lanes of traffic, sidewalk and access to the subway wide enough for at least two lanes of traffic, and a measurably safer access across the tracks of the Oregon Short Line Railroad than is at present afforded.

▉ With regard to the remedial statutes passed by the Second Extraordinary Session. While any individual or corporation having a contract such as appellant Burke & Co. here would perhaps be benefited by the passage of such statutes, the statutes were not passed in aid of such corporations but to aid the State to carry on its highway program. Respondents argue and cite cases to the effect that a property right to a judgment may not be taken away by legislative action. The Supreme Court of the United States, with respect to retrospective or retroactive legislation said this in *Charlotte Harbor & Northern Ry. Co. v. Wells,* 260 U. S. 8, 43 Sup. Ct. 3, 67 L. ed. 100:

"The general and established proposition is that what the legislature could have authorized it can ratify, if it can authorize at the time of ratification. *United States v. Henszen,* 260 U. S. 370, 51 L. ed. 1098, 27 Sup. Ct. 742, 11 Ann. Cas. 688; *Phillip Wagner v. Leser,* 239 U. S. 207, 60 L. ed. 230, 36 Sup. Ct. 66; *Stockdale v. Atlantic Ins. Co.,* 20 Wall. 323, 22 L. ed. 348. And the power is necessary that government may not be defeated by omissions or inaccuracies in the exercise of functions necessary to its administration. To this accommodation, *Forbes Pioneer Boat Line v. Everglades Drainage Dist.,* 258 U. S. 384, 66 L. ed. 646 [676], 42 Sup. Ct. 325, ·is not militant. The case concedes the power of ratification, and declares the principle upon which it is based, and necessarily, recognized the subjection and obligation of persons and property to government and for government, and its continuation for the purposes of government.''

This fully answers respondents' contention that legislative action cannot breathe life into a dead contract in this, that unquestionably the Legislature may authorize the State Department of Public Works to lay out as it has Eleventh Avenue South as a State Highway, and contract for the construction of a subway therein, therefore, under the authority of this case, since it could have authorized such procedure in the first place, it can now ratify it.

Respondents herein were not parties to the contract. They therefore have no property right in it. The only determination in the previous case was that the law as it then existed did not empower the State to make this kind of a contract. This judgment could not, however, go the effect of saying that as against these respondents this law could never be changed, and if they are not entitled to compensation, as we hold that they are not, there could be no possible benefit to them by not giving retrospective or retroactive effect to these remedial statutes, except whatever benefit might accrue by reason of delay in requiring the State to make a new contract based upon the now existing statutes, the present validity of which is not as of this time questioned. A rule of law and its application must be based upon reason. This action

is not brought by respondents as taxpayers but is based upon their claim of right as adjacent and abutting property owners, having held that thereby they are not entitled to compensation from the State because of the construction of the subway, they are not in a position to question the retroactive effect of the remedial statutes. (*Williams v. Baldridge*, 48 Ida. 618, 284 Pac. 203; *In re Allmon*, 50 Ida. 223, 294 Pac. 528; *Bannock County v. Citizens Bank & Trust Co.*, 53 Ida. 159, 22 Pac. (2d) 674; *Riley v. Trenton*, (Tex. Civ. App.) 184 S. W. 344.)

The judgment is therefore reversed and the cause remanded with instructions to overrule respondents' demurrer to appellants' answer.

Costs to appellants.

Morgan and Ailshie, JJ., concur.

Holden, J., dissents.

Budge, J., did not sit at the hearing nor participate in the opinion.

ON PETITION FOR REHEARING.

(January 16, 1936.)

GIVENS, C. J.—Respondents filed a Petition for Rehearing on various grounds. The first one we will consider is the complaint that the opinion erroneously stated the date when Eleventh Avenue South was designated as a State Highway, but they do not show how the difference in the date is of any importance since it had been designated as a State Highway prior to the time the contract was made giving rise to the controversy herein, and was merely inserted in the original opinion by way of recital of the surrounding circumstances leading up to the making of the contract and the commencement of the action herein.

Respondents next contend that the opinion erroneously stated that respondents were not taxpayers. The opinion does

not so state. It does state that "This action is not brought by respondents as taxpayers but is based upon their claim of right as *adjacent and abutting property owners.*" (Italics herein.) Unquestionably they were taxpayers or alleged themselves to be, but no mention is made in their original brief of any claim by them because of any interest or right of theirs because of being taxpayers, their entire theory of the case as disclosed by their original briefs being based on their rights as *abutting and adjacent property owners.* (Italics herein.)

Respondents contend that the Acts of the 1935 Second Extraordinary Session of the Legislature are in direct violation of Article 11, Section 12 of the Idaho Constitution, and that this point has not been sufficiently answered. The opinion discussed this phase of the controversy indicating that these Acts were not passed for the benefit of any corporation, and we content ourselves with adding in support of this proposition, that these Acts are not in violation of Article 11, Section 12, *Oregon Short Line R. Co. v. Clark County Highway Dist.*, 22 Fed. (2d) 681, where curative Acts as to Highway Districts were upheld against a similar contention and in an analogous situation, where they were enacted as herein for furtherance of a general policy and for the benefit of the public.

Complaint is made that the court failed to pass on respondents' contention that the validating or curative Acts were special laws in violation of Article 3, Section 19, prohibiting the passage of laws legalizing unauthorized or invalid Acts of *any officer against the State.* Neither the respondents in the original brief nor in their brief of authorities on Petition for Rehearing have pointed out wherein the 1935 Acts are in violation of Article 3, Section 19, except on the theory that they are local and special statutes. No Act illegal or otherwise of any officer was by these statutes legalized against the State, and being entirely general in their character applicable to all similar situations wherever located they are not in violation of this Section of the Constitution as

local or special under the holdings of this Court. *Jones v. Power County et al.*, 27 Ida. 656, at 665, 150 Pac. 35:

"A statute is general if its terms apply to, and its provisions operate upon, all persons and subject matters in like situation. (See Dillon on Municipal Corporations, 5th ed., sec. 142.) The true test seems to be: Is the classification capricious, unreasonable or arbitrary?

"The case of *Owen v. Sioux City,* 91 Iowa, 190, 59 N. W. 3, in which was under consideration an act of the legislature, by its terms made applicable only to cities of a certain class organized since January 1, 1881, seems to us to be in point and decisive of this contention. It is said therein:

" 'Will the act be declared unconstitutional, when facts are judicially known to exist that would be a legal basis, for classification, because a date is used as a basis, and not such facts? That the legislature relied upon the date as a reason for its act, in any other sense than as it served as a means by which the law was made to meet the conditions and circumstances leading to its enactment, no one can believe. Of course the law was not made because of the date. It was made to meet conditions and wants, existing or anticipated, of a class of cities, and the date was but the separating point whereby other cities were excluded from the operation of the law. That it makes another classification of cities than those based on population is not fatal to the act, because, as we have said the classification on the basis of population is by legislative action, and there is nothing prohibiting such further classification as the legislature may think proper; and the only proper inquiry as to classification in the case at bar is, is the act, because of the classification adopted, without that uniformity of operation contemplated by the constitution? We think not. . . . . We are not aware of any rule whereby an act of the legislature must specify the conditions on which its validity must depend, but, on the contrary, the court will assume the existence of such conditions until it is apparent that they do not exist. In *Munn v. Illinois,* 94 U. S. 113, 24 L. ed. 77, wherein the supreme court of the United States had under consideration the constitutionality

of a state law, this language is used: "For our purposes we must assume that, if a state of facts could exist which would justify such legislation, it actually did exist when the statute under consideration was passed. For us the question is one of power, not of expediency. If no state of circumstances could exist to justify such a statute, then we may declare this one void; but if it could, we must presume it did." ' "

The same principle being reaffirmed in *In re Bottjer*, 45 Ida. 168, 260 Pac. 1095.

Other portions of the Petition for Rehearing while under various headings and phases raise again the question of whether or not the respondents are entitled to compensation or an injunction in lieu of compensation because of the alleged taking of their property without compensation. We exhaustively determined that point and reaffirm our position in that matter.

The remaining contention is that the court did not sufficiently consider the claimed unconstitutional retroactive effect of the statutes as violating the sanctity of the judgment as a contract in the previous suit and cite cases which considered Acts held to violate the Federal and State Constitutions. The Supreme Court of the United States in *Hodges v. Snyder*, 261 U. S. 600, 43 Sup. Ct. 435, 67 L. ed. 819, on this precise point said:

"The plaintiffs in error concede that the legislature, in the general exercise of its inherent power to create and alter the boundaries of school districts, may create new districts by the consolidation of others. *Stephens v. Jones*, 24 S. D. 97, 100, 123 N. W. 705. And they likewise recognize that, since the legislature had the power to ratify that which it might have originally authorized, there would have been no violation of due process if the curative act had been enacted and become effective before any adjudication had been made in the pending litigation as to the invalidity of the consolidated district. *United States v. Heinszen*, 206 U. S. 370, 386, 51 L. ed. 1098, 1103, 27 Sup. Ct. 742, 11 Ann. Cas. 688; *Rafferty v. Smith B. & Co.*, 257 U. S. 226, 232, 66 L. ed. 208, 210, 42 Sup. Ct. 71; *Charlotte Harbor & N. R. Co. v. Wells*, decided

by this court October 16, 1922 (260 U. S. 8, 9, *ante*, 100, 43 Sup. Ct. 3, 67 L. ed. 100). And see generally, as to giving effect to acts passed *pendente lite*, but before the hearing, *Stockdale v. Atlantic Ins. Co.*, 20 Wall. 323, 331, 22 L. ed. 348, 351; *Mills v. Green*, 159 U. S. 651, 656, 40 L. ed. 293, 294, 16 Sup. Ct. 132; and *Duplex Printing Press Co. v. Deering*, 254 U. S. 443, 464, 65 L. ed. 349, 355, 16 A. L. R. 196, 41 Sup. Ct. 172.

"Their sole contention is that, as the curative act was not enacted until after the supreme court had decided, on the first appeal, that the consolidated district was invalid, and did not go into effect until after the circuit court had entered judgment adjudging its invalidity, and enjoining the defendants from further conducting its affairs, it deprived them, as applied by the supreme court, without due process, of the private property rights which had been vested in them under these adjudications.

"It is true that, as they contend, the private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation. (Citing cases.)

"This rule, however, as held in the Wheeling & B. Bridge Case, does not apply to a suit brought for the enforcement of a public right, which, even after it has been established by the judgment of the court, may be annulled by subsequent legislation, and should not be thereafter enforced; although, in so far as a private right has been incidentally established by such judgment, as for special damages to the plaintiff, or for his costs, it may not be thus taken away. (Citing cases.)"

Counsel criticize our reliance on *Charlotte Harbor & Northern Ry. Co. v. Wells*, 260 U. S. 8, 43 Sup. Ct. 3, 67 L. ed. 100, in support of our holding that this retrospective legislation did not impair any rights they had in the judgment as a contract because in that .case there was no final judgment. *Hodges v. Snyder, supra,* on the point involved herein, cited as a sustaining authority *Charlotte Harbor & Northern Ry.*

*Co. v. Wells, supra,* and we have held that the respondents herein are not entitled to compensation or injunctive relief on the theory that their property has not been taken and that therefore as indicated in the original opinion they had no individual property right in the judgment. The application of the cases cited by respondents are distinguishable because not stating the majority rule or on two grounds: first, that the acts herein considered were curative in nature, and second, had to do as pointed out in *Hodges v. Snyder, supra,* with private rights and not public rights. The opinion of the State court in *Hodges v. Snyder,* 45 S. D. 149, 186 N. W. 867, 25 A. L. R. 1128, goes exhaustively into the question herein involved, reasoning in harmony with the opinion herein and as appears from the annotation following that opinion in 25 A. L. R. 1136, the majority of the courts have held in uniformity with our position. See also *In re Chester School District's Audit,* 301 Pa. 203, 151 Atl. 801, and *Worley v. Idleman,* 285 Ill. 214, 120 N. E. 472:

"The objection most frequently urged in cases similar to the one at bar, and one which appellants in effect here make, is that by the curative act the Legislature has invaded the constitutional province of the judiciary, and has attempted to set aside the force and effect of the judgments and decrees of the courts. Where the judgment or decree is based on the ground of want of authority from the Legislature to issue the bonds in the manner in which they have been issued, it has been uniformly held, so far as our investigation discloses, that the Legislature is not, by reason of such judgment or decree, deprived of the right to pass a curative act validating such bonds, and that the Legislature does not, by passing the curative act, invade the province of the judiciary or set aside any judgment or decree of court. *Uyter v. Franklin,* 172 U. S. 416, 19 Sup. Ct. 183, 43 L. ed. 498; *Givens v. Hillsborough County,* 46 Fla. 502, 35 So. 88, 110 Am. St. 104; *Schneck v. City of Jeffersonville,* 152 Ind. 204, 52 N. E. 212; *Wrought Iron Bridge Co. v. Town of Attica,* 119 N. Y. 204, 23 N. E. 542. The former judgment and decrees in which the validity of the bonds of July 1, 1912,

was involved, were based solely on the ground that the highway commissioners were without legal authority to issue the bonds. This lack of authority has been supplied by the curative act and by the action of the voters of the town at a town meeting, and the objection to the bonds which existed at the time of the former judgment and decrees no longer exists. Moreover, appellants, by virtue of the judgment and decrees rendered in their favor, became vested with no property rights which are divested by the curative act. The judgment of this court and the decrees of the circuit court upon which appellants rely were not final adjudications that the bonds of July 1, 1912, did not constitute a legal indebtedness against the town of Bowdre, for the reason that the bondholders were not parties to any of the suits in which the question of the validity of those bonds arose. Until an adjudication had been made in a suit between the town and the bondholders declaring that the bonds were not valid, the Legislature had the right and power, as between the town and the bondholders, to validate those bonds, provided the people of the town gave their assent thereto. The judgment of this court and the decrees of the circuit court were based upon the findings that the bonds did not then constitute an indebtedness against the town, and no tax could therefore be legally levied or assessed to pay the same. While appellants' property thereby became freed from liability for taxes to pay the principal and interest of those bonds so long as the bonds did not constitute an indebtedness against the town, their property did not thereby become freed from liability for taxes to pay the principal and interest of the bonds, if the bonds should thereafter become a valid indebtedness against the town.''

Respondents refer to the case of *Langever v. Miller*, 124 Tex. 80, 76 S. W. (2d) 1025, 96 A. L. R. 836, which case, however, did not have to do with a curative statute or with public rights but had to do with the changed retrospective enforcement of private rights. It is to be borne in mind that the basic premise in this phase of the case is that the

Legislature could have in the first instance authorized the action ratified in the 1935 Statutes.

With this amplification in answer to the points raised by respondents on their Petition for Rehearing, the original opinion is adhered to and the Petition for Rehearing is denied.

Morgan and Ailshie, JJ., concur.

Holden, J., dissents.

Budge, J., did not sit or participate.