(July 16, 1915.)

J. R. JONES, Plaintiff, v. POWER COUNTY, IDAHO, W. S. SPARKS, M. E. WALKER, and C. F. EGGERS, as Members of and Constituting the Board of County Commissioners of said County, F. NETTIE RICE, as County Treasurer and Tax Collector, PAUL BULFINCH, as Clerk of the Board of County Commissioners and County Auditor, O. F. CROWLEY, as County Assessor, and KEELER BROTHERS, a Corporation, Defendants.

[150 Pac. 35.]

NEWLY ORGANIZED COUNTIES—LAWS APPLICABLE TO—POWERS AND DUTIES OF BOARDS OF COMMISSIONERS—EXPENDITURES—INDEBTEDNESS—FUNDING BONDS—CONSTITUTIONAL LAW.

1. The general laws of the state applicable to new counties authorize them to cause to be transcribed certain records; to provide furniture, fixtures, record books, etc., and to provide county jails. The ordinary and necessary expenses of a new county include expenditures for these purposes and the county commissioners are not prohibited from making such expenditures, when necessary, in order to place the county government in operation, without submitting the question to a vote of the electors, even though the indebtedness thereby incurred exceeds the income and revenue provided for the county for that year.

2. Although the act of the legislature creating a new county provides that its commissioners shall make provision for the payment of any bonded indebtedness which may be apportioned to it, by levy and taxation at the time fixed by law for so doing, and in the same manner as the commissioners of the counties from which its territory is derived, should or could have done, that method of taking care of such indebtedness is not exclusive, and it was competent for the legislature to and it did permit the additional method provided in chap. 20, Sess. Laws 1915.

3. Chap. 20, Sess. Laws 1915, provides a means whereby the warrant indebtedness of counties, situated as is Power, may be extinguished by the issuance of funding bonds, and that chapter governs this case.

4. A statute is general if its terms apply to, and its provisions operate upon, all persons and subject matters in like situation. Chap. 20, Sess. Laws 1915, examined and held to not contravene

sec. 5 of art. 18 or sec. 19 of art. 2 of the constitution of Idaho, providing that "the legislature shall establish, subject to the provisions of this article, a system of county government which shall be uniform throughout the state; and by general laws shall provide for township or precinct organization"; also "the legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . . Regulating county and township business or the election of county and township officers."

Petition for writ of prohibition.    Alternative writ quashed; peremptory writ denied.

O. R. Baum, for Plaintiff.

The expenses intended by the framers of the constitution to be included in the term "ordinary and necessary" are such as recur with regularity and certainty, and are generally within the usual income and revenue and have some fairly well-defined limits.    It was held in *Brown v. City of Corry,* 175 Pa. 528, 34 Atl. 854, 855, that any expense that recurs with regularity and certainty and is necessary for the existence of a municipality is an ordinary expense of that municipality. . The expense of building a jail costing $4,693.75 is not an expense which recurs regularly or irregularly in the existence of a county.    It is an unusual and extraordinary expense.    It would be unjust to the taxpayers of the county and contrary to the plain intent of the constitution to leave the board of county commissioners without any restrictions and permit a large indebtedness for a jail to be thrust upon the taxpayers at the very outset of the county's organization. (*Bannock County v. Bunting & Co.,* 4 Ida. 156, 37 Pac. 277.)

Our position is upheld by the decision of this court in the case of *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965, wherein it is held that sec. 99, chap. 58, Session Laws of 1913, requires that all warrant indebtedness of a county shall be liquidated only by levy and taxation, and cannot be taken care of through the issuance of funding bonds.    The act applies only to counties organized under acts of the state legislature approved subsequent to Jan. 1, 1911.    It does not operate in all counties of the state.    "To make a classi-

fication good, it must be founded on differences and char-
acteristics sufficiently marked and important to make them
naturally a class by themselves." ' (*Alexander v. City of
Elizabeth*, 56 N. J. L. 71, 28 Atl. 51, 23 L. R. A. 525, 529.)

Richards & Haga, for Defendants.

No expense could more properly be specified as part of the
ordinary and necessary expense of the new county than the
cost of erecting a jail. An expense need not be one which
regularly recurs in order that it may be an ordinary and
necessary expense within the meaning of the constitutional
provision. (*Hickey v. City of Nampa*, 22 Ida. 41, 124 Pac.
280.)

"It is, of course, the duty of commissioners to provide a
suitable place for the holding of the courts and public offices,
jails, etc., but such rooms must be temporarily provided, at
as little expense as is consistent with providing suitable
quarters, until the question can be submitted to the people."
(*Bannock County v. Bunting & Co.*, 4 Ida. 156, 37 Pac. 277.)

The bonded indebtedness assumed by Power county from
the counties out of which it was created is not required to be
liquidated by annual levy and taxation. (*Frazier v. Hastings*,
26 Ida. 623, 144 Pac. 1122.)

Since prior to the first session of the state legislature, a
statute has been in existence in Idaho (sec. 3602, Rev. Codes) ;
authorizing counties to fund their outstanding indebtedness,
and the personnel of the court, contemporaneous with the
statute and with the constitutional convention, specifically
held that the words "any indebtedness" in the statute in-
cluded warrant indebtedness. (*Bannock County v. Bunting,
supra.*)

Subsequent to the decision of the court in the Bannock
county case, the statute was amended so as to specifically
mention warrant indebtedness. It further appears that at
the first session of the state legislature subsequent to the
decision of this court in *Peavy v. McCombs*, 26 Ida. 143, 140
Pac. 965, an act was passed, being chap. 20, Sess. Laws of

1915, which again specifically authorized counties to take up their outstanding warrant indebtedness by the issuance of bonds. "It is an elementary rule that constitutions are to be construed in the light of previous history and the surrounding circumstances." (*State v. Sedgwick*, 46 Mont. 187, 127 Pac. 94, 95.)

"One of the methods clearly authorized by this section of the constitution (sec. 15, art. 7) for bringing the business of the counties to a cash basis was and is by issuing bonds for the purpose of taking up outstanding warrants and funding bonds." (*Bannock County v. Bunting & Co.*, 4 Ida. 156, 37 Pac. 277.) The act is of uniform operation in all counties now existing to which it applies, and the act also applies to any and all counties which may be hereafter formed, organized or created; and it is therefore not special legislation. (Dillon on Municipal Corp., 5th ed., secs. 142, 144.)

It is not necessary that the reasons for the act appear upon its face. (*State v. Derbyshire*, 79 Wash. 227, 140 Pac. 540.)

A case directly in point upon the validity of an act relating to certain public improvements authorized in cities which had been organized since a particular date is the case of *Owen v. City of Sioux City*, 91 Iowa, 190, 59 N. W. 3.

"We must assume that, if a state of facts could exist which would justify such legislation, it actually did exist when the statute under consideration was passed." (*Munn v. Illinois*, 94 U. S. 113, 24 L. ed. 77.)

MORGAN, J.—This is an original proceeding to procure the issuance of a writ of prohibition. The plaintiff is a resident and taxpayer of Power county and the defendants W. S. Sparks, M. E. Walker and C. F. Eggers are members of and constitute the board of county commissioners; the defendant F. Nettie Rice is county treasurer and tax collector, the defendant Paul Bulfinch is clerk of the district court and *ex officio* auditor and recorder and clerk of the board of county commissioners, and the defendant O. F. Crowley is county assessor of said county.

Power county was created by an act of the legislature approved January 30, 1913, of territory segregated from the counties of Cassia, Bingham, Blaine and Oneida. Pursuant to the provisions of chap. 6 of the Sess. Laws of 1913, p. 30, creating the county, the amount of its proportion of the indebtedness of the counties from which it derived its territory was ascertained and apportioned to it, and on June 24, 1915, there remained unpaid upon the indebtedness the sum of $49,885, exclusive of interest, of which amount $18,360 was due to Oneida county and $31,525 was due 'o Blaine county.

Various expenses were incurred incident to the organization of the county including that of transcribing and certifying records, the purchase of furniture, record books and office supplies; there was also an expense of $4,693.75 incurred in the erection of a jail, for all of which warrants were issued.

It appears that a considerable portion of these expenses, incident to organization, have been paid, from time to time, out of money from the current expense fund, and that the county has been unable, because of said fund being thus depleted, to redeem some of its warrants which have been issued to meet current expenses. The total warrant indebtedness of the county amounted, on June 24, 1915, to the sum of $88,144.31, which, with accrued interest, exceeded the sum of $90,000.

On the 24th day of June, 1915, the board of county commissioners met in special session pursuant to notice, and thereupon ascertained and determined that the items composing said amount of $88,144,31, together with accrued interest of approximately $2,000, constituted binding and subsisting obligations of Power county, and made and entered of record a certificate of such determination, and thereupon made and entered of record a resolution declaring that they deemed it advisable and for the best interest of the county that funding bonds in the sum of $90,000 be issued to provide funds with which to pay and discharge a like amount of said outstanding warrant indebtedness, and authorized the issuance of such bonds for that purpose. Thereafter negotiable fund-

ing bonds of said county, aggregating the sum of $90,000, were issued, which issue was composed of 180 bonds for $500 each, being numbered from 1 to 170, inclusive, and series B bonds being numbered from 171 to 180, inclusive, each bond being dated January 1, 1915, and bearing interest from  date until paid at the rate of 6% per annum, payable semi-annually on January 1st and July 1st of each year.   These bonds were negotiated and sold to the defendant Keeler Brothers, a corporation.   The board of county commissioners on June 24, 1915, also made and entered an order that the interest falling due on said bonds on July 1, 1915, amounting to $2,700, be paid by the county treasurer out of any moneys in the current expense fund.

The purpose of this proceeding is to prohibit the defendants in their respective official capacities from paying or causing to be paid out any moneys of the county in liquidation of this bonded indebtedness, either principal or interest, and from taking any steps in the levying or collection of taxes for the purpose of raising funds to pay the same.

The plaintiff contends that the proposed payment of $2,700 or of any sum of money on the interest falling due on July 1, 1915, and the proposed extension on the records and tax-rolls, and the subsequent collection of taxes attempted to be levied for the payment of the principal and interest of said funding bonds, are illegal and in excess of the jurisdiction of each and all of the defendants.

This bond issue was made pursuant to the provisions of sec. 1, chap. 20, p. 72, Sess. Laws 1915, which is as follows:

"The Board of County Commissioners of any new county which may have been formed, organized or created pursuant to the acts of the Legislature of the State of Idaho, approved subsequent to the first day of January, A. D. 1911, or which may be hereafter formed, organized or created, may in the exercise of its judgment and discretion when deemed advisable and in the interest and for the benefit of the county, and to enable such county to be placed as near as may be on a cash basis, issue and negotiate coupon bonds at such time and

in such manner and upon such terms as are deemed for the best interests of the county, in order to provide funds with which to pay and entirely discharge any part, either on all of the warrant, bonded, floating or other indebtedness or obligations which may have been either assumed or are owing by such new county to the county or counties out of which such new county was formed or the indebtedness incurred by such new county in the transcribing and certifying of records and the preparing of indexes, in the purchase and providing of books, records, furniture, fixtures, office supplies, safes, vaults and a jail, in the employment of accountants and appraisers and for other ordinary and necessary equipment and expense incident to the organization of such new county, or an amount of the then outstanding warrant indebtedness of such new county equal to the amount previously expended by such new county for the purpose or purposes herein above mentioned, and such bonds shall constitute a legal charge and obligation of the county. All such bonds shall conform to, and provisions be made for their payment in accordance with the provisions of Sections 1960, 1963, 1965 and 1967 of the Revised Codes of Idaho as amended; Provided, That before the Board of County Commissioners of a county shall issue bonds under the provisions of this Act, the Board must first ascertain and determine that the particular bonded, warrant or other indebtedness, of the county, proposed to be retired by the bond issue constitutes binding and subsisting obligations of the county, and they shall thereupon cause a certificate of determination to be made and entered in and upon the records of said Board and the findings of said Board shall thereafter be conclusive as a basis for the issuance of such bonds and the levy and collection of taxes for their payment; Provided, further, That no bonds issued pursuant to the provisions of this Act shall in any wise increase the principal amount of the existing indebtedness of the county; and Provided further that this Act shall not in any wise be construed as a repeal of any of the power and authority vested in the Board of County Commissioners of any new county by act of the Legislature particularly relating to such new county."

It is urged by plaintiff that, since the cost of the jail created a liability against the county during the year, it was incurred in excess of the income and revenue provided for it for such year without the assent of two-thirds of the qualified electors thereof, the outstanding warrants issued in payment for its construction were issued in violation of sec. 3, art. 8 of the constitution of Idaho, and do not represent a legal charge nor a binding or subsisting obligation against the county.

Under the proviso of sec. 3, art. 8, the prohibitions therein expressed do not apply to the ordinary and necessary expenses authorized by the general laws of the state. The general laws of the state applicable to new counties authorize them to cause to be transcribed certain records of the counties from whence they are taken; to provide furniture, fixtures, record books, etc., and to build county jails, when necessary, without submitting the question to a vote of the electors of such counties. The ordinary and necessary expenses of a new county include the expenditures above referred to. To hold otherwise would prevent the new county government from going into operation until the question of the expense of procuring copies of the records, erecting a jail and procuring offices, furniture and equipment necessary for the conduct of the business of the county, was submitted to a vote. Neither the framers of the constitution nor the legislature intended that it should be necessary to submit such a question to the electors. When a county organization is complete and the county government is in running operation, expenditures over and above those mentioned in sec. 2, art. 8 of the constitution must be submitted to the voters.

The only question we have had any doubt about is as to the validity of the bonds covering the item of the cost of constructing the jail, amounting to nearly $4,700. Of course the commissioners of a new county have no authority to run it into debt for the construction of an unnecessarily expensive jail. The law contemplates that business sense and good judgment will be used in such matters and that no more money will be expended for a jail than is necessary for the

proper housing and detention of county prisoners. It is not contended that the amount expended for that purpose was extravagant or more than was really needed under the facts and circumstances of the case.

Plaintiff further contends that since the act of the legislature creating Power county provides that its commissioners shall make provision for the payment of any bonded indebtedness which may be apportioned to it, by levy and taxation at the time fixed by law for so doing and in the same manner as the commissioners of the counties of Oneida, Bingham, Blaine and Cassia should or could have done, no alternative remains, and this indebtedness must be met in that way and no other. The method of taking care of the indebtedness in question provided in the act creating the county is not exclusive. It was competent for the legislature to and it did permit the additional method provided in chap. 20, Sess. Laws 1915, above quoted.

It is further urged that under the provisions of sec. 15, art. 7, of the constitution as made operative by chap. 58 (p. 173), Sess. Laws 1913, all warrant indebtedness must be liquidated by annual levy and taxation, and cannot be taken care of by issuing funding bonds, and the case of *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965, is cited in support of this contention.

It must be borne in mind that since the enactment of said chap. 58 and since the decision of the case of *Peavy v. McCombs,* chap. 20 of Sess. Laws 1915, was enacted, and there being no constitutional prohibition against the legislature providing means whereby warrant indebtedness of counties, situated as is Power, may be extinguished by the issuance and sale of funding bonds, the legislative act last above mentioned governs this case.

Finally, it is contended that chap. 20 of Sess. Laws 1915, is unconstitutional, because it violates sec. 5, art. 18, and sec. 19, art. 3, of the constitution of Idaho. These sections are as follows:

"Sec. 5, Art. 18: The legislature shall establish, subject to the provisions of this article, a system of county governments

which shall be uniform throughout the state; and by general laws shall provide for township or precinct organization.''

''Sec. 19, Art. 3: The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . . Regulating county and township business, or the election of county and township officers.''

This contention is based upon the fact that the legislative act in question is not made applicable to all the counties in the state, nor even to all of those still owing indebtedness incurred incident to their organization, but is confined to those which were formed, organized or created pursuant to acts of the legislature approved subsequent to January 1, 1911, and to those which may have been or may hereafter be formed, organized or created subsequent to the enactment of said chapter.

A statute is general if its terms apply to, and its provisions operate upon, all persons and subject matters in like situation. (See Dillon on Municipal Corporations, 5th ed., sec. 142.) The true test seems to be: Is the classification capricious, unreasonable or arbitrary?

The case of *Owen v. Sioux City*, 91 Iowa, 190, 59 N. W. 3, in which was under consideration an act of the legislature, by its terms made applicable only to cities of a certain class organized since January 1, 1881, seems to us to be in point and decisive of this contention. It is said therein:

''Will the act be declared unconstitutional, when facts are judicially known to exist that would be a legal basis for classification, because a date is used as a basis, and not such facts? That the legislature relied upon the date as a reason for its act, in any other sense than as it served as a means by which the law was made to meet the conditions and circumstances leading to its enactment, no one can believe. Of course the law was not made because of the date. It was made to meet conditions and wants, existing or anticipated, of a class of cities, and the date was but the separating point whereby other cities were excluded from the operation of the law. That it makes another classification of cities than those based on population is not fatal to the act, because, as we have

said, the classification on the basis of population is by legislative action, and there is nothing prohibiting such further classification as the legislature may think proper; and the only proper inquiry as to classification in the case at bar is, is the act, because of the classification adopted, without that uniformity of operation contemplated by the constitution? We think not. . . . . We are not aware of any rule whereby an act of the legislature must specify the conditions on which its validity must depend, but, on the contrary, the court will assume the existence of such conditions until it is apparent that they do not exist. In *Munn v. Illinois,* 94 U. S. 113, 24 L. ed. 77, wherein the supreme court of the United States had under consideration the constitutionality of a state law, this language is used: 'For our purposes, we must assume that, if a state of facts could exist which would justify such legislation, it actually did exist when the statute under consideration was passed. For us the question is one of power, not of expediency. If no state of circumstances could exist to justify such a statute, then we may declare this one void; but if it could, we must presume it did.' "

It is a part of the political history of Idaho that 14 of our 37 counties have been created by acts of the legislature approved since January 1, 1911, and many of them are financially weak and ill-prepared to meet at once the burdensome expenses incident to organization and to discharge, as it falls due, their proportionate share of the warrant and bonded indebtedness of their parent counties. It seems to us to be probable that the legislature, having in mind the difficulties with which these new counties were confronted, enacted said chapter 20 as a means whereby the date of liquidation of their indebtedness might be deferred, and did not include therein the older counties of the state because it was not considered the same necessity existed in their case.

We conclude the bonds in question are valid obligations of Power county. The alternative writ of prohibition is quashed and the peremptory writ denied. Costs are awarded to the defendants.

Sullivan, C. J., and Budge, J., concur.