96 P.3d 637

Lawrence ("Bud") MOON, Jr., individually and on behalf of all others similarly situated, Alex H. Moon, by and through her parents and guardians, Trina H. Moon, and James H. Moon, individually and on behalf of all others similarly situated, Kaley F. Moon, by and through her parent and guardian, Laura F. Moon, individually and on behalf of all others similarly situated, Jeanne Wolcott, individually and on behalf of all others similarly situated, Jerry Vickers, individually and on behalf of all others similarly situated, Bruce Charles Rothermel, individually and on behalf of all others similarly situated, Plaintiffs–Respondents,

v.

NORTH IDAHO FARMERS ASSOCIATION; Wayne Meyer, William Dole, Michael Dole, Warren Dole, Jacquot Farms Enterprises, Inc., Satchwell Farms, Inc., Wallace Meyer, Terrell K. Baune, Baune Farms, Inc., Paul Deshiell, Arnold Brincke Keith Daman, Paul Daman, Denny Bros., L.L.C., Chad Denny, Matthew Drechsel, Dreschsel Brothers, Inc., Dennis Duncan, David Duncan, Chris Duncan, Joyce Duncan, Randy Duncan, David Fish, Thomas Freeburg, David Gumm, Charles A. Hahner, Hahner Farms, Inc., Larry Hansen, Joyce Hansen, Martin Hanson, Hatter Cree Farms, Inc., Don Hay, Clarence Haeg, Randy Holt, Duane Jenneskens, Cindy Janneskens, Dale R. Johnson, Ted Lacy, Phillip Lampert, Nick Lawson, Casey Lawson, Allen Lewis, Maple Leaf Farm, Inc., Herbert W. Millhorn, Millhorn Farms, Inc., Bruce Mills, Richard Morrison, Elmer Ness, Chris R. Ram, Michael Roecks, Rogada Farms, Inc., John Schultz, Karl Schultz, Tammy Schultz, Ron Tee, Allen Thoma, Windy Hill Farm, Inc., Todd F. Wright, Gary Wrigh, Wrights, Inc.; Wade Mc Lean, Doug Bruce, Erling Place, Michael Schlepp, Gary French; Lampert Farm Ranch, Inc., Earl Clausen, Michael La Shaw, Catherine Morris, Terry Nichols, Eugene Towne, Jeff Bloomsburg, Brian La Shaw, Joe Sievers; Bergen Bothman, Defendants–Appellants,

and

Schlepp Ranch, Clausen Farms, Inc., Larry Heaton, David Lampert, Eric Larson and the State of Idaho, Defendants.

Lampert Farm & Ranch, Inc., Earl Clausen, Michael La Shaw, Catherine Morris, Terry Nichols, Eugene Towne, Jeff Bloomsburg, Brian La Shaw, Larry Heaton and Joe Sievers; G. Wade Mc Lean, Doug Bruce, Michael Schlepp, Gary French and Erling Place, Third–Party Plaintiffs–Appellants,

v.

Tim Freeburg and Michael Freeburg; Henry Bentz, Chester Franz, d/b/a Double F. Ranch, Michael Hemken, Hemken Farms, Inc., Terry Jacklin and Walter Meyer, Third–Party Defendants–Appellants,

and

Sherry Claus, as personal representative of the Estate of John Carter, Gary Johnson, d/b/a D & G Farms, Daman Brothers Partnership, Gary Dreshel, d/b/a Reshel Brothers, Jim Fischer, Ford Gumm, Alvin Haas, Haas Farms General Partnership, Francis Hughes, J.R. Simplot Company, d/b/a Jacklin Seed–Simplot, Rodney Jacot, Ted Lacy, d/b/a Lacy Farm Enterprises, Thelma Mc Clellan, as personal representative of the Estate of L.E. Mc Clellan, William Mellick, Walter Meyer, Glen Miles, Morrfarms, Inc., Heaton Farms Partnership, KSH Partnership, Gerald Holt d/b/a Rockcreek, Third–Party Defendants.

Nos. 29896, 29897, 29898, 29899, 29900, 29901.

Supreme Court of Idaho, Boise, May 2004 Term.

Aug. 2, 2004.

Hall, Farley, Oberrecht & Blanton; and Batt & Fisher, Boise, for appellants North Idaho Farmers.

Paine, Hamblen, Coffin, Brooke & Miller, LLP, Coeur d'Alene and Baise & Miller, Washington, D.C., for appellants Meyer through Wrights, Inc. Peter C. Erbland argued for all appellants.

Clements, Brown & McNichols, Lewiston, for appellants McLean through French.

Michael E. Ramsden and Jedediah James Whitaker, Coeur d'Alene, for appellants Lampert Farm through Sievers.

Brady Law, Chartered, Boise, for appellants Bothman, Bentz and Jacklin.

D. Samuel Eismann, Coeur d'Alene, for Freeburg through Hemken Farm.

Gordon Law Offices, Boise and Hagens, Berman LLP, Seattle, WA. for respondents. Steve W. Berman argued.

Hon. Lawrence G. Wasden, Attorney General; Clive D. Strong, Deputy Attorney General; Clay Riggs Smith, Deputy Attorney General, Boise, for amicus curiae, State of Idaho. Clay Riggs Smith argued.

BURDICK, Justice.

The defendant-seed growers are appealing the district court's decision holding the amendments to I.C. § 22–4801 et seq., which were passed by the 2003 Legislature, unconstitutional. This Court granted a permissive appeal of this interlocutory order. For the reasons outlined below, we hold the recently enacted amendments to be in conformity with the Idaho and United States Constitutions.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs are individuals claiming sensitivity to grass smoke, who filed an action against various seed growers in north Idaho who traditionally burn the post-harvest straw and stubble in their fields as part of their farming activities. The plaintiffs' complaint, filed in June of 2002, asserted among others, claims of nuisance and trespass. The plaintiffs filed for a preliminary injunction in July of 2002, seeking to enjoin the defendant-seed growers from burning their Kentucky bluegrass fields. The district court, in August 2002 took testimony from the plaintiffs' medical experts, State officials from Washington and Idaho, class members and grass farmers. The district court issued findings of fact and conclusions of law and ultimately granted the preliminary injunction to abate the injury caused by the field burning of the grass farmers and required the posting of a bond.

In September of 2002, however, the Idaho Supreme Court granted the defendant-seed growers' request for a writ of prohibition, after concluding that the injunction exceeded in some respects the district court's jurisdiction. The Court enjoined the district court from enforcing the terms of the preliminary injunction against the grass burners.

The plaintiffs sought and were granted certification as a class [1] and were granted leave to amend their complaint to assert a punitive damage claim. Thereafter, in the early spring of 2003, several bills related to field burning were under consideration by the Idaho legislature. The district court held a hearing on April 11, 2003, where the impact of the various bills was discussed with respect to the plaintiffs' property and their statutory rights to abate the nuisance and/or enjoin the trespass caused by the grass burners' smoke.

In April 2003, after Governor Kempthorne signed House Bill 391 into law, the plaintiffs filed a motion to the district court to declare the law unconstitutional as applied to the facts of this case. HB 391, which was passed as an emergency measure, amended the Smoke Management and Crop Residue Disposal Act of 1999, I.C. § 22–4801 et seq., and effectively extinguished liability for all North Idaho grass farmers that burn in compliance with its provisions. Of particular significance, HB 391 amended portions of I.C. § 22–4803 and added a new statute, I.C. § 22–4803A.

The district court heard the motion of the plaintiffs, arguing the unconstitutionality of I.C. § 22–4803A(6), which reads as follows:

---

1. The plaintiffs were granted class certification by the order of the district court dated April 28, 2003.

(6) Crop residue burning conducted in accordance with section 22–4803 Idaho Code, shall not constitute a private or public nuisance or constitute trespass. Nothing in this chapter shall be construed to create a private cause of action against any person who engages in or allows crop residue burning of a field or fields required to be registered pursuant to section 22–4803(3) Idaho Code, provided such activities are conducted in accordance with chapter 49, title 22, Idaho Code, and rules promulgated thereunder.

On June 4, 2003, the district court issued an order holding HB 391 unconstitutional. The district court held: (1) that HB 391 effects an unconstitutional taking of property without prior compensation or due process; (2) that HB 391 imposes a limitation that is not in the interests of the common welfare and thus violative of Article I, § 1 of the Idaho Constitution; and (3) that HB 391 is a "local or special law" in violation of Article III, § 19 of the Idaho Constitution. The district court concluded that for two months of the year, August and September, "the burning invades and destroys two of the three fundamental aspects of the plaintiffs' property rights ... possession and use." The district court also ruled that by affirmatively granting the grass burners the right to maintain the nuisance on the plaintiffs' property, the State imposed an easement on the plaintiffs' land.

The district judge who ruled on the constitutionality of the statutory amendments, particularly I.C. § 22–4806, was disqualified by order dated June 12, 2003. By order of the Idaho Supreme Court dated June 28, 2003, the Honorable District Judge W.H. Woodland was appointed to take over the case. Shortly thereafter, the district court granted the defendants' motion to stay the proceedings until the Supreme Court determines the motion for a permissive appeal of the interlocutory order pursuant to I.A.R. 12(a). The Idaho Supreme Court granted the motion for permissive appeal on July 22, 2003.

## ISSUES ON APPEAL

1. Did the district court err in finding HB 391 is an unconstitutional "taking" of private property under both the Idaho and United States Constitutions?

2. Did the district court err in finding that HB 391 is a violation of Article I, § 1 of the Idaho Constitution, because the "limitation" imposed by the amendments were not in the "interests of the common welfare"?

3. Did the district court err in finding the HB 391 is a "local or special law" in violation of Article III, § 19 of the Idaho Constitution?

## STANDARD OF REVIEW

The constitutionality of a statute is a question of law over which this Court exercises free review. *State v. Cobb,* 132 Idaho 195, 197, 969 P.2d 244, 246 (1998); *Fremont–Madison Irr. Dist. and Mitigation Group v. Idaho Ground Water Appropriators, Inc.,* 129 Idaho 454, 926 P.2d 1301 (1996). The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and "must overcome a strong presumption of validity." *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990). Courts are obligated to seek an interpretation of a statute that upholds its constitutionality. *State v. Newman,* 108 Idaho 5, 13, 696 P.2d 856, 864 (1985). The judicial power to declare legislative action invalid upon constitutional grounds is to be exercised only in clear cases. *State ex rel. Brassey v. Hanson,* 81 Idaho 403, 406, 342 P.2d 706, 709 (1959).

## DISCUSSION

### I.

HB 391 affected amendments to portions of I.C. §§ 22–4801, –4803 and –4804 and added an entirely new section, I.C. § 22–4803A. The plaintiffs' motion dated April 30, 2003, challenged the constitutionality of HB 391 in several respects.

In asserting their challenge to the statute, the plaintiffs contended that the immunity conferred by I.C. § 22–4803A(6) to the grass farmers who burn their fields results in a taking of private property without the payment of compensation in violation of federal and state constitutional provisions. The stat-

ute at issue provides in relevant part: "Crop residue burning conducted in accordance with section 22–4803, Idaho Code, shall not constitute a private or public nuisance or constitute a trespass." The district court determined that I.C. § 22–4803A(6) is unconstitutional because it takes property without prior compensation in violation of the Fifth Amendment to the federal Constitution.

The just compensation clause of the Fifth Amendment of the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use, without just compensation." The Idaho Constitution also guarantees its citizens the right of due process if private property is taken for a public use, pursuant to Article I, § 13, and provides for just compensation for such a taking, pursuant to Article I, § 14. The question this Court must answer, then, is whether the grant of immunity to the grass farmers can be deemed a "taking" from the plaintiffs. In other words, have the plaintiffs been deprived, by the statute, of their common law right to bring a nuisance action and/or a trespass action, without remuneration.

Idaho case law has defined "trespass" to apply to the wrongful interference with the right of exclusive possession of real property, while the tort of private "nuisance" applies to the wrongful interference with the use and enjoyment of real property. *Mock v. Potlatch Corp.*, 786 F.Supp. 1545 (D.Idaho 1992). *See also Carpenter v. Double R Cattle Co., Inc.*, 105 Idaho 320, 669 P.2d 643 (Ct.App. 1983) ("But where an invasion of property is merely incidental to the use of adjoining property, and does not physically interfere with possession of the property invaded, it generally has been classified as a nuisance rather than a trespass."); I.C. § 52–101 (defining nuisance as "anything which is injurious to health [ . . . ]or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property."). A useful differentiation between trespass and nuisance is found in a case that the district court found to be squarely on point, in which the Iowa Supreme Court noted: "Trespass comprehends an actual physical invasion by tangible matter. An invasion which constitutes a nuisance is usually by intangible substances, such as noises or odors." *Bormann v. Board of Supervisors*, 584 N.W.2d 309 (Iowa 1998), *cert. den. sub nom, Girres v. Bormann*, 525 U.S. 1172, 119 S.Ct. 1096, 143 L.Ed.2d 96 (1999), *citing Ryan v. City of Emmetsburg*, 232 Iowa 600, 603, 4 N.W.2d 435, 439 (1942). Thus, in the plaintiffs' situation, an action could be said to lie in nuisance and in trespass, respectively, given the invasion of the thick, oppressive smoke generated by the farmers' burning and the particulates emitted from the smoke onto the plaintiffs' land.

In *Covington v. Jefferson County*, 137 Idaho 777, 53 P.3d 828 (2002), the increased noises, offensive odors, dust, flies, and litter caused by the operation of the landfill near the Covingtons' property formed the basis of their claim of inverse condemnation. In their amended complaint, they alleged that their property was impaired by the operation of the landfill by an amount in excess of 25% of the property's total value, which they claimed amounted to a taking for which they were entitled to compensation. The Court analyzed the elements of the claim, including whether the Covingtons' property was invaded or appropriated to the extent of a taking, and determined as a matter of law that the Covingtons had failed to allege a taking under either the state or the federal constitution. *Id.* at 780, 53 P.3d at 831.

According to the *Covington* court, before an owner is entitled to compensation for a violation of Article I, § 14 of the Idaho Constitution, his property must be "taken" and not merely "damaged." *Id.* at 781, 53 P.2d at 832, *citing Powell v. McKelvey*, 56 Idaho 291, 307, 53 P.2d 626, 632–33 (1935). This conclusion was based on the language of the constitutional provision that contains only the word "taken" and which has not authorized the collection of damages where there is no actual physical taking of the property. *Id.* at 780, 53 P.3d at 831, *citing Idaho–Western Ry. Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod*, 20 Idaho 568, 584–85, 119 P. 60, 65 (1911). The Court also held that under the United States Constitution, a physical invasion or a regulatory

taking, which permanently deprives the owner of "all economically beneficial uses" of his land, requires compensation. *Id., citing Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

■ The case presently before the Court is not an inverse condemnation case but as in *Covington,* deals with a regulatory taking. *Covington,* 137 Idaho at 781, 53 P.3d at 832. Although a footnote in *Covington* indicates that "[t]his activity may constitute a nuisance claim which is not before this court," the opinion does not address whether the elimination of such a nuisance claim by act of the legislature could or could not be deemed a taking. The determination of whether or not there was a taking is a matter of law to be resolved by the trial court. *Rueth v. State,* 100 Idaho 203, 596 P.2d 75 (1979). The trial court should also determine the nature of the property interest so taken. *Tibbs v. City of Sandpoint,* 100 Idaho 667, 670, 603 P.2d 1001, 1004 (1979).

The taking asserted by the plaintiffs is not a physical taking because the plaintiffs' land is not appropriated and because the smoke complained of does not result in a loss of access or of any complete use of the property. *See Hughes v. State of Idaho,* 80 Idaho 286, 328 P.2d 397 (1958) (impairment of a right of access constituted a 'taking of property'). *See also Covington, supra* (where there has been no loss of access to or denial of any use of the Covingtons' property). The taking asserted then, is in the nature of a regulatory taking, but the plaintiffs have not claimed a permanent deprivation of all economically beneficial uses of their land. As such, under the Idaho Constitution, which does not allow less than a total deprivation of use or denial of access, and under *Lucas,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798, there is no taking in violation of the state or the federal constitution. *See also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, et al.,* 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (holding no categorical taking had occurred because the regulations had only a temporary impact on the petitioners' fee interest in the properties); *cf. Renninger v. State, et*

*al.,* 70 Idaho 170, 213 P.2d 911 (1950) (a taking requiring just compensation occurs when the state inflicts permanent and irreparable injury on land).

■ The district court, in analyzing the extent of the taking, concluded that "[a]ny destruction, interruption, or deprivation by the common, usual and ordinary use of property is by the weight of authority a taking of one's property in violation of the constitutional guaranty." *Knowles v. New Sweden Irr. Dist.,* 16 Idaho 217, 231, 101 P. 81, 86 (1908), *as cited in Hughes v. State,* 80 Idaho 286, 294, 328 P.2d 397, 401 (1958). As noted above, the destruction of access and deprivation of the use of property may be compensable, but the mere interruption of the use of one's property, as it is less than a permanent (complete) deprivation, does not mandate compensation. This Idaho authority relied upon by the district court has since been overruled by the Supreme Court's interpretation of the scope of a taking. *Covington, supra.*

The district court also relied on *Renninger v. State,* 70 Idaho 170, 213 P.2d 911 (1950), for the proposition that just compensation is warranted even when the taking is intermittent. This proposition is derived from cases cited in *Renninger* holding that where a *structure* causes 'permanent liability to *intermittent* but inevitably recurring overflows' it is taking. *Id., citing Sanguinetti v. United States,* 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608 (1924). The physical structure in *Sanguinetti* was a dam, and the servitude created by reason of the intermittent overflow was held to be a partial taking. *See id.* In *Renninger,* the structure that led to injury to the land was a bridge—distinguishing it from the smoke created by the field burning in the case at hand.

Another proposition cited by the district court, which is not the holding of *Renninger,* is a quote from *Pumpelly v. Green Bay & Mississippi Canal Co.,* 13 Wall. 166, 80 U.S. 166, 20 L.Ed. 557 (1871):

> where real estate is actually invaded by superinduced additions of water, earth, sand or other material . . . so as to effectually destroy or impair its usefulness, it is a

taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle.

*Id.* at 181, 20 L.Ed. at 561. Rather, in *Renninger,* where the plaintiff sought to recover damages in inverse condemnation for the injury caused by the bridge built by the State, the Court held that when the state inflicts permanent and irreparable injury on the land without making any compensation, there is a violation of Article I, § 14 of the Idaho Constitution. The district court's reading of *Renninger* is inaccurate.

■ Next, the district court concluded that the right to maintain a nuisance is an easement, citing the RESTATEMENT OF PROPERTY § 451, at 2912 (1944), which provides: "An affirmative easement entitles the owner thereof to use the land subject to the easement by doing acts which, were it not for the easement, he would not be privileged to do." As explained by the comments to § 451:

> In many cases, the use an owner of an affirmative easement is entitled to make enables him to intrude upon the land subject to the easement in ways which, were it not for the easement, would make him a trespasser upon the land. On the other hand, it may entitle him to do acts on his own land which, were it not for the easement, would constitute a nuisance."

*Id.* cmt. (1944). Idaho, however, has not adopted the Restatement; moreover, in the case before the Court, the smoke created by the burning of the fields is the "nuisance or trespass" immunized by the statute, I.C. § 22–4803A(6). This immunity thus entitles the grass farmers to invade the property of the plaintiffs' with the smoke from their burning fields, while preventing the plaintiff landowners from full possession, use, and quiet enjoyment of their land and denying them a remedy from the invasion from the farmers' smoke.

The district court followed the reasoning of the court in *Bormann, v. Board of Supervisors.* In *Bormann,* the Iowa Supreme Court recalled long-standing law that the right to maintain a nuisance is an easement, 584 N.W.2d at 315–16, *citing Churchill v. Bur-lington Water Co.,* 94 Iowa 89, 62 N.W. 646, 647 (Iowa 1895), which holding is consistent with the Restatement of Property § 451. The court characterized the nuisance immunity provision in section 352.11(1)(a) of the Iowa Code as creating an easement in the property affected by the nuisance (the servient tenement) in favor of the applicants' land (the dominant tenement). *Id.* at 316. Concluding that easements are property interests subject to the just compensation requirements of the Iowa and the Federal Constitutions, the court ruled that the approval of the application for an agricultural area pursuant to 352.11(1)(a) conferred immunity, which resulted in the Board's taking of easements in the neighbors' properties for the benefit of the applicants. *Id.* at 321. The court concluded that the legislature had exceeded its authority by authorizing the use of property in such a way as to infringe on the rights of others by allowing the creation of a nuisance without the payment of compensation, compelling the court to hold "that portion of Iowa Code section 352.11(1)(a) that provides for immunity against nuisances unconstitutional and without any force and effect." *Id.* at 321–322.

There is no direct authority in Idaho holding that the right to maintain a nuisance is an easement. In a case arising out of the mooring of a houseboat on Lake Coeur d'Alene that was open, notorious, continuous, uninterrupted and with knowledge of but without permission of the littoral owners, the Court held that the houseboat owners had prescribed part of the littoral rights and acquired an easement in gross as against the littoral owners. *West v. Smith,* 95 Idaho 550, 511 P.2d 1326 (1973). In an action to enjoin the maintenance of a sign on a state highway right-of-way, the Court referred to a California case involving an alleged obstruction or nuisance on a highway in the form of a shed erected on a right-of-way, which held: "Where the sole question is whether the maintenance of the structure or obstruction is inconsistent with the full enjoyment of the right of way by the public, the owner of the fee is deemed to possess no greater rights than those who are strangers to the title."

*State ex rel. Burns v. Kelly,* 89 Idaho 139, 146, 403 P.2d 566 (1965).

The challenge in *Bormann* was one of inverse condemnation by the landowners when the Board of Supervisors failed to seek condemnation in court. 584 N.W.2d at 311–12. The landowners claimed an invasion of their property by the Board's approval of an application for an agricultural area designation, the effect of which was an immediate interference with the plaintiffs' enjoyment and use of their land and a corresponding, measurable loss of the property's value. The *Bormann* court found historical support for allowing compensation for interferences short of a physical taking or touching of the land in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)(statute that was an attempt to condemn property and deny the owner coal company the occupancy and right to mine his property viewed as a taking of an interest without any physical intrusion) and *Richards v. Washington Terminal Co.,* 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914) (recognizing the taking of a property interest or right to be free from 'special and peculiar' governmental interference with enjoyment and eliminating the requirement of a physical taking or touching). The *Bormann* court looked to more recent United States Supreme Court cases drawing a distinction between *per se* takings as outlined in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), and all other cases involving regulatory takings, which are to be examined on a case-by-case basis, calling for a balancing test that is one of reasonableness,[2] to determine at which point the exercise of police power becomes a taking. *Bormann,* 584 N.W.2d at 316–17, *citing Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, 648 (1978).

The district court in deciding whether the farmers' grass burning effected a taking also relied on *Richards v. Washington Terminal Co.,* 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914), as cited in *Bormann,* 584 N.W.2d at 319, which awarded compensation for the gases and smoke emitted from engines in the tunnel, which constituted "special and peculiar" damage resulting in diminution of the value of the plaintiff's property. *Richards,* 233 U.S. at 557, 34 S.Ct. at 658, 58 L.Ed. at 1093. The grass farmers correctly argue here, that the plaintiffs have not alleged any "special and peculiar" damage so as to bring themselves within the scope of a private nuisance as contemplated by *Richards,* but only such damages as naturally and unavoidably result from the field burning and are shared generally by property owners whose lands lie within the range of the inconveniences necessarily incident to proximity to the fields being burned.

We reiterate that Idaho has not recognized the right to maintain a nuisance as an easement, and we decline the plaintiffs' invitation to adopt the Restatement of Property § 451 as the law in Idaho. *See Diamond v. Farmers Group, Inc.,* 119 Idaho 146, 804 P.2d 319 (1990) ("[T]his Court has consistently displayed its preference for selectively examining various sections and comments from the Restatement, and thereafter adopting, citing favorably, or rejecting the provision, as the occasion warrants"). Further, we decline to hold that the nuisance immunity provision of I.C. § 22–4803A(6) creates an easement in favor of the grass farmers.

■ The grass farmers argue that the plaintiffs have failed to identify Idaho authority for the proposition that the Legislature is foreclosed from abolishing nuisance or trespass causes of action that have not yet accrued. Article XXI, § 2 of the Idaho Constitution provides that the legislature has the power to modify or repeal common law causes of action. It is well established that "it is the province of the Legislature, and not the court, to modify the rules of the common law." *Moon v. Bullock,* 65 Idaho 594, 607, 151 P.2d 765, 771 (1944). The Court has held that the Legislature can abolish common law causes of action entirely or impose statutes

---

**2.** The test focuses on three factors: (1) the economic impact of the regulation on the claimant's property; (2) the regulation's interference with investment-backed expectations; and (3) the character of the governmental action. *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631.

of limitation without violating Article I, § 18. *Hawley v. Green*, 117 Idaho 498, 788 P.2d 1321 (1990). More recently, the Court determined that no one has a vested right to a particular common law or necessarily, to a statutory cause of action. *Osmunson v. State*, 135 Idaho 292, 295, 17 P.3d 236, 239 (2000). The Court's comments in these two cases were directed to whether a newly enacted statute contradicted a provision of the Idaho Constitution, specifically Article I, § 18. In *Kirkland v. Blaine County Medical Ctr.*, 134 Idaho 464, 4 P.3d 1115 (2000), the Court held that I.C. § 6–1603 placing a cap on personal injury damages in personal injury cases does not violate the right to jury trial as guaranteed by Article I, § 7 of the Idaho Constitution, does not constitute special legislation in violation of Article III, § 19 of the Idaho Constitution, and does not violate the separation of powers doctrine embodied in the Idaho Constitution.

Accordingly, we hold that that the provision of Idaho Code § 22–3806A(6) granting immunity to the grass farmers does not represent an unconstitutional taking under either the state or federal constitution.

## II.

The district court ruled that HB 391 violates Article I, § 1 of the Idaho Constitution. The district court applied the test of *Newland v. Child*, 73 Idaho 530, 537, 254 P.2d 1066, 1069 (1953) to analyze whether I.C. § 22–4803A(6) promoted the common welfare and placed a reasonable limitation on the plaintiffs' inalienable right "to possess and protect property" conferred by Article I, § 1. Disagreeing with the Legislature's findings and making an independent finding that Kentucky bluegrass can be grown without burning, as is done in Oregon and Washington, the district court determined that the limitation imposed by the statute was not "in the interests of the common welfare."

The plaintiffs' challenge to the statute is a facial challenge, invoking a standard requiring the challenger to establish that no set of circumstances exist under which the Act would be valid. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707 (1987); *see also*

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371 (1982); *State v. Newman*, 108 Idaho 5, 12, 696 P.2d 856, 863 (1985), citing *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Because there clearly are some interests of the common welfare being protected by the Legislature's action in allowing field burning, we cannot say that the plaintiffs have met their burden to show no conceivable constitutional application for this legislation. There were no facts presented at this stage of the case, and accordingly, an "as applied" challenge is not available to the plaintiffs.

Nor were there facts presented challenging either the sufficiency or the motivation behind the Legislature's findings. "The existence of facts supporting the legislative judgment is to be presumed." *United States v. Carolene Products Co.*, 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234, 1241 (1938). The legislature's judgment is "well-nigh conclusive." *Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27, 37 (1954); *see also Sweet v. Rechel*, 159 U.S. 380, 392, 16 S.Ct. 43, 45, 40 L.Ed. 188, 193 (1895); *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303, 311 (1926) ("If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control."). Plaintiffs challenging the constitutionality of a statute are required to provide "some factual foundation of record" that contravenes the legislative findings. *O'Gorman & Young v. Hartford Fire Ins. Co.*, 282 U.S. 251, 258, 51 S.Ct. 130, 132, 75 L.Ed. 324, 328 (1931). In the absence of such proof, "the presumption of constitutionality must prevail." *Id.* at 257, 51 S.Ct. at 131, 75 L.Ed. at 328.

The district court erred in holding I.C. § 22–4803A(6) unconstitutional because it violated Article I, § 1 of the Idaho Constitution.

## III.

The district court ruled HB 391 unconstitutional in that it constitutes a local or

special law in violation of Article III, § 19 of the Idaho Constitution, which provides that "[t]he legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: ... For limitation of civil or criminal actions."

■ A law "is not special when it treats all persons in similar situations alike." *Sun Valley Co. v. City of Sun Valley*, 109 Idaho 424, 429, 708 P.2d 147, 152 (1985); *Twin Falls Clinic and Hospital Bldg. v. Hamill*, 103 Idaho 19, 26, 644 P.2d 341, 348 (1982). Nor is a law local "when it applies equally to all areas of the state." *Sun Valley Co.*, 109 Idaho at 429, 708 P.2d 147; *School Dist. No. 25 v. State Tax Comm'n*, 101 Idaho 283, 291, 612 P.2d 126, 134 (1980). "A law is not special simply because it may have only a local application or apply only to a special class, if in fact it does apply to all such classes and all similar localities and to all belonging to the specified class to which the law is made applicable." *Bd. of County Comm'rs of Lemhi County v. Swensen*, 80 Idaho 198, 201, 327 P.2d 361, 362 (1958), *citing Mix v. Bd. of Comm'rs*, 18 Idaho 695, 705, 112 P. 215 (1910).

■ The standard for determining whether a law is local or special was most recently set forth in *Concerned Taxpayers of Kootenai County v. Kootenai* County, 137 Idaho 496, 499, 50 P.3d 991, 994 (2002). The Court stated therein, "The test for determining whether a law is local or special is whether the classification is arbitrary, capricious, or unreasonable." *Id.* at 499, 50 P.3d at 994. This enunciation of the test was derived from *Sun Valley Co.*, 109 Idaho at 429, 708 P.2d 147, *citing Washington County v. Paradis*, 38 Idaho 364, 369, 222 P. 775, 777 (1923). A close reading of *Paradis*, however, indicates the source of the test as *Jones v. Power County*, 27 Idaho 656, 150 P. 35 (1915), where the Court said in discussing general and special laws:

> A statute is general if its terms apply to, and its provisions operate upon, all persons and subject matters in like situation. (*See* DILLON ON MUNICIPAL CORPORATIONS, 5th ed., sec. 142.) The true test seems to be: Is the classification capricious, unreasonable or arbitrary?

*Id.* at 665, 150 P. at 37. Local and special laws are defined separately and apply to different situations. The *Jones* case applies the "capricious, unreasonable arbitrary" test to special laws not local laws. To the extent *Sun Valley Co. v. City of Sun Valley*, is said to apply to local laws, it is disavowed.

The district court in its memorandum decision rephrased the test for analyzing whether a law is local or special, when it stated: "The test for determining whether a law is local or special is basically whether the legislature has singled out 'persons or corporations for preferred treatment.' " *Concerned Taxpayers of Kootenai County v. Kootenai County*, 137 Idaho at 499, 50 P.3d at 994, *citing Jones v. Bd. of Medicine*, 97 Idaho 859, 877, 555 P.2d 399, 417 (1976). This test also incorrectly links the local and special laws under the same test. In *Jones*, the court specifically held:

> It has been indicated that the distinction between general and special legislation is that a law is general if "all persons subject to it are treated alike as to privileges, protection and in every other respect." *Wanke v. Ziebarth Const. Co.*, 69 Idaho 64, 202 P.2d 384, 393 (1948). Stated in other terms, "A statute is general if its terms apply to, and its provisions operate upon, all persons and subject-matter in like situation[s]." *Jones v. Power County*, 27 Idaho 656, 150 P. 35, 37 (1915); *In re Bottjer*, 45 Idaho 168, 260 P. 1095 (1927). "It is well settled that a law is not special in character 'if all persons subject to it are treated alike, under similar circumstances and conditions, in respect to both the privileges conferred and the liabilities imposed.' " *State v. Horn*, 27 Idaho 782, 793, 152 P. 275, 279 (1915). [Citations omitted.]

> Clearly, it is arguable at least that the Act in question here [ (the recovery limitation in the Idaho Malpractice Act) ] is special in that it selects from a class of persons otherwise subject to liability for their negligent acts, physicians and hospitals, and releases or extinguishes, in part at least, their otherwise liability contrary to the interdiction of special laws in Art. III, § 19.

*Jones v. Bd. of Medicine,* 97 Idaho at 876–77, 555 P.2d at 416–17. Applying the test as rephrased, the district court concluded that there was "simply no proof that the legislature has singled out 'persons or corporations for preferred treatment.'"

The district court then examined the text of I.C. § 22–4803A(6), which is the sole provision challenged as a local or special law by the plaintiffs. The district court first concluded that nothing in the immunity provision, I.C. § 22–4803A(6), pertains only to the ten north Idaho counties. However, the district court reasoned that "via I.C. §§ 22–4803 and 22–4803A(3)," the immunity statute *is* specific to the ten northern counties. The district court then found that the immunity statute does not apply "equally to all areas of the state" and is arbitrary, capricious and unreasonable, supporting its conclusion that I.C. § 22–4803A(6) is a special or local law. We will discuss each of the district court's findings in turn.

The immunity provision provides: "Crop residue burning conducted in accordance with section 22–4803, Idaho Code, shall not constitute a private or public nuisance or constitute a trespass." According to I.C. § 22–4803, entitled Agricultural Field Burning, open field burning of crop residue is allowed when the burning is done in compliance with the provisions and rules promulgated in the chapter and when no other economically viable alternatives to burning are available. *See* I.C. § 22–4803(1). Under subsection (2), the following provisions shall apply to *all* agricultural field burning:

(a) In order to minimize impacts upon populated areas of the counties designated in subsection (3) of this section, any person conducting crop residue burning must make every reasonable effort to burn only when weather conditions are conducive to adequate smoke dispersion, and the burning does not emit particulates or other materials which exceed the state and federal ambient air quality standards; and

(b) The open burning of crop residue shall be conducted in the field where it is generated.

I.C. § 22–4803(2)(a), (b). These provisions apply to all agricultural field burning state-wide. Subsection (3) imposes additional requirements upon the ten northern counties to register each field with the department each year burning is conducted and to obtain authorization from the department that the conditions of subsection (2)(a) are met before burning.

I.C. § 22–4803A defines violations of the registration and preauthorization requirements pursuant to subsection (3) of I.C. § 22–4803. Thus, there are no ramifications other than to field burners in the ten counties. Section 4803A also outlines procedures for imposing penalties for such violations, for inspections and investigations of possible violations, and sets forth the limitation of actions applicable to proceedings to recover for violations of any provision of the chapter. Subsection (5) of I.C. § 22–4803A specifically provides "the department shall investigate all agricultural field burning and crop residue disposal complaints lodged against persons conducting burning in Kootenai, Benewah, Boundary, Bonner, Shoshone, Latah, Clearwater, Nez Perce, Lewis and Idaho counties." It is clear that pursuant to subsection (5), the statute mandates heightened scrutiny in the ten named counties, to ensure compliance with the general conditions that must be satisfied in anticipation of burning.

Lastly, we consider the second sentence of subsection (6), which follows the immunity provision:

Nothing in this chapter shall be construed to create a private cause of action against any person who engages in or allows crop residue burning of a field or fields required to be registered pursuant to section 22–4803(3), Idaho Code, provided such activities area conducted in accordance with the chapter 484, title 22, Idaho Code, and rules promulgated thereunder.

We read this portion of the statute to mean that if any person fails to comply with the provisions of the chapter when burning, there is no negligence *per se* on account of a violation of the statute. The holding of this Court is that subsection (6) of the statute applies equally to all crop residue burners

and not only to the ten northern counties; therefore, I.C. § 22–4803A(6) is not a local law.

The district court concluded that the statute was arbitrary, capricious and unreasonable, based principally on its independent finding that there is no need to burn. Generally, plaintiffs challenging the constitutionality of a law are required to provide "some factual foundation of record" that contravenes the legislative findings. *O'Gorman & Young v. Hartford Fire Ins. Co.*, 282 U.S. 251, 258, 51 S.Ct. 130, 132, 75 L.Ed. 324, 328 (1931). In the absence of such proof, "the presumption of constitutionality must prevail." *Id.* at 257, 51 S.Ct. at 131, 75 L.Ed. at 328. *See also United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) ("The existence of facts supporting the legislative judgment is to be presumed."); *Jones v. Power County*, 27 Idaho 656, 666, 150 P. 35, 37 (1915) ("We are not aware of any rule whereby an act of the legislature must specify the conditions on which its validity must depend, but, on the contrary, the court will assume the existence of such conditions until it is apparent that they do not exist."). Despite some particularized references to the ten northern counties, including the imposition of stricter requirements on North Idaho counties, the statute applies to all counties. We reverse the district court's conclusion that the statute is a local and a special law.

## CONCLUSION

The immunity provision found at I.C. § 22–4803A(6) does not effect a taking in violation of the Fifth Amendment of the United States Constitution or Article I, § 14 of the Idaho Constitution. It does not violate Article I, § 1 of the Idaho Constitution or the prohibition against local or special laws found in Article III, § 19 of the Idaho Constitution. The statute is constitutional.

Chief Justice TROUT and Justices SCHROEDER and McKEE, Senior Judge, concur.

Justice KIDWELL, dissenting.

The majority opinion has misinterpreted and misapplied the Idaho Constitution in its analysis of I.C. § 22–4803A(6); therefore, I respectfully dissent and set forth a portion of my analysis as follows:

### I.C. 22–4803A(6) (a portion of HB 391) Violates Article III, Section 19 Of The Idaho Constitution

The Idaho Constitution prohibits certain "local" or "special laws." Article III, section 19 states: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say ... For limitation of civil or criminal actions." Plaintiffs' argument that HB 391 is a special or local law addresses I.C. § 22–4803A(6). The district court correctly found that HB 391 limits "civil actions" in ten north Idaho counties via § 22–4803A(6), which states:

Crop residue burning conducted in accordance with section 22–4803, Idaho Code, shall not constitute a private or public nuisance or constitute a trespass. Nothing in this chapter shall be construed to create a private cause of action against any person who engages in or allows crop residue burning of a field or fields required to be registered pursuant to section 22–4803(3), Idaho Code, provided such activities are conducted in accordance with chapter 49, title 22, Idaho Code, and rules promulgated thereunder.

### A. I.C. 22–4803A(6) Does Not Apply Equally To All Areas Of The State And Is Therefore Unconstitutional

The controlling law in Idaho concerning local and special laws can be found in a recent unanimous decision of the Idaho Supreme Court, *Concerned Taxpayers of Kootenai County v. Kootenai County*, 137 Idaho 496, 50 P.3d 991 (2002). As the majority indicates, the district court rephrased the law of *Concerned Taxpayers* at one point ("the test for determining whether a law is local or special is basically whether the legislature has singled out 'persons or corporations for preferred treatment' "); however, the major-

ity fails to recognize that the district court used the correct law of *Concerned Taxpayers* in its analysis and applied it correctly.

In *Concerned Taxpayers*, the Court held, "A law 'is not special when it treats all persons in similar situations alike,' and it is not local 'when it applies equally to all areas of the state.' " 137 Idaho 496, 500, 50 P.3d 991, 994 (2002). The district court made reference to this language when it cited to *Sun Valley Co. v. City of Sun Valley* for the proposition that, "Accordingly, I.C. § 22–4803A(6) is a special or local law because it does not apply 'equally to all areas of the state.' " 109 Idaho 424, 429, 708 P.2d 147 (1985).

The district court found that HB 391 does not apply equally to all areas of the state. Though nothing in the language of I.C. § 22–4803A(6) pertains only to specified counties, it references two sections that are limited to ten north Idaho counties. The district court stated that § 22–4803A(6) references § 22–4803 and § 22–4803A(3), (this is likely a clerical error of the district court—the section references § 22–4803 and § 22–4803(3), not § 22–4803A(3)). Both sections 22–4803 and 22–4803(3) are limited to ten north Idaho counties. The district court concluded that § 22–4803A(6) is a special or local law because it does not apply "equally to all areas of the state" via the two sections referenced. The district court is correct in its conclusion, though it may be helpful to look at each sentence of § 22–4803A(6) in more detail.

**1. The First Sentence of § 22–4803A(6)**

The first sentence reads: "Crop residue burning conducted in accordance with section 22–4803, Idaho Code, shall not constitute a private or public nuisance or constitute a trespass."

Since § 22–4803 is referenced, it is helpful to look at it more closely. The majority correctly identifies that the provisions of subsection (2) apply to **all** agricultural field burning. Provision (2)(a) refers to the ten counties when it states, "In order to mini-

mize impacts upon populated areas of the counties designated in subsection (3) of this section, any person ..." It appears from this alone that § 22–4803 refers to the counties listed under subsection (3) only to show that these counties are intended to be protected. However, further reading shows that subsection (3) does not apply equally to all agricultural field burning because it imposes additional requirements upon ten counties to register and obtain authorization from the department before burning. The majority acknowledges the heightened scrutiny, but it fails to explain how the heightened scrutiny does not effect equal application of the statute. It seems clear that the additional requirements set forth in subsection (3) demonstrate that the statute does not apply equally to all areas of the state.

**2. The Second Sentence of § 22–4803A(6)**

The second sentence reads:

*Nothing in this chapter shall be construed to create a private cause of action against any person who engages in or allows crop residue burning of a field or fields required to be registered pursuant to section 22–4803(3),* Idaho Code, provided such activities are conducted in accordance with chapter 49, title 22, Idaho Code, and rules promulgated thereunder.

(Emphasis added.) The majority incorrectly interprets this to mean the section applies to all crop burners in the state, again, without much explanation. The second sentence specifically refers to § 22–4803(3), which states, "[I]n the counties specifically identified in this subsection, no person shall conduct or allow any crop residue burning without first registering each field with the department each year before burning is conducted, and without first receiving authorization from the department ..." Since everyone that engages in crop burning in these ten counties must first register and obtain authorization, the second sentence appears to say, "Nothing in this chapter shall be construed to create a private cause of action against any person who engages in or allows

crop residue burning in Kootenai, Benewah, Boundary, Bonner, Shoshone, Latah, Clearwater, Nez Perce, Lewis and Idaho counties." This clearly shows that the statute does not apply equally to all counties that conduct field burning statewide.

## B. A Law Is Local Or Special If It Is Arbitrary, Capricious Or Unreasonable

*Concerned Taxpayers* also noted, "The test for determining whether a law is local or special is whether the classification is arbitrary, capricious, or unreasonable." 137 Idaho 496, 500, 50 P.3d 991, 994 (2002). The district court applied this rule, citing *Kirkland v. Blaine County Medical Center*, 134 Idaho 464, 4 P.3d 1115 (2000). The legislature stated the intent of HB 391 in I.C. § 22–4801, which reads:

> It is the intent of the legislature to promote agricultural activities while at the same time protecting public health. The legislature finds that due to the climate, soils and crop rotations unique to north Idaho Counties, crop residue burning is a prevalent agricultural practice and that there is an environmental *benefit to protecting water quality from the growing of certain crops* in environmentally sensitive areas. It is the intent of the legislature to reduce the loss to the state of its agricultural resources by providing a safe harbor to farmers when burning crop residues in compliance with this chapter and limiting the circumstances under which agricultural operations may be exposed to claims outside of the lawful framework for crop residue burning.

(Emphasis added.) The district court correctly observed, "[T]he statute does not say that 'burning protects water quality.' Instead, the statute in essence says 'the crop which the legislature is protecting protects water quality.' " This implies that if farmers are not allowed to burn, they will not grow this crop for which there is an environmental benefit. The district court stated that this belief is based on the fallacy that one must burn in order to grow these crops. The district court points out that Washington, Oregon, and free markets have proven that these crops can be grown without burning. It concluded that the purpose of the statute as written by the legislature is arbitrary, capricious and unreasonable since it is based on a fallacy.

The majority states that the district court's conclusion is based on "an independent finding that 'there is no need to burn' " and further states that the plaintiffs must provide "some factual foundation of record" that contravenes the legislative findings. For support of this contention, the majority cites *O'Gorman & Young v. Hartford Fire*, 282 U.S. 251, 258, 51 S.Ct. 130, 132, 75 L.Ed. 324, 328 (1931). However, that case did not analyze whether a statute was special or local. Again, the controlling case in Idaho regarding local and special laws is *Concerned Taxpayers*. In *Concerned Taxpayers* the Idaho Supreme Court was not persuaded by the defendant's justifications for the statute, and went on to state, "Regardless of the rationalizations and social policy arguments offered by [the defendant], one cannot escape the fact that [the statute in question] is directly contrary to the prohibitions contained in Article III, § 19 of the Idaho Constitution." 137 Idaho 496, 499, 50 P.3d 991, 996.

The district court's conclusion that the rationalizations given for the statute are unpersuasive and that § 22–4803A(6) is a special or local law, and therefore unconstitutional, is correct and should have been upheld. This analysis precludes the necessity of addressing additional constitutional issues raised.